[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 23, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-13174

_____

D. C. Docket No. 02-20676-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAX DANIEL,
RICHARD DANIEL,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(March 23, 2006)

Before BIRCH and MARCUS, Circuit Judges, and MILLS[*], District Judge.

_____

[*] Honorable Richard Mills, United States District Judge for the Central District of
Illinois, sitting by designation.

PER CURIAM:

Max and Richard Daniel appeal their convictions and sentences for several firearm and drug offenses, arguing that the district court improperly admitted evidence concerning an uncharged burglary, abused its discretion regarding evidentiary matters by admitting hearsay, violated appellants' Confrontation Clause rights with respect to that hearsay, failed to find the evidence insufficient to support conviction on some charges, and erred by applying the Sentencing Guidelines in a mandatory fashion. Because this last issue constitutes reversible error, we must VACATE the original sentences and REMAND for resentencing. The district court did not err as to appellants' first and fourth arguments, and any error associated with the second and third arguments is harmless beyond a reasonable doubt; therefore, we AFFIRM the convictions.

## I. BACKGROUND

Appellants were indicted in the Southern District of Florida on ten counts related to drugs and guns. Count 1 was for conspiracy to engage in the business of firearms dealing without being licensed importers, manufacturers, or dealers, in violation of 18 U.S.C. § 922(a)(1)(A). Count 2 was for conspiracy to distribute five grams or more of cocaine base and a detectable amount of marijuana, in

violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(D) and 21 U.S.C. § 846.

Counts 3 and 7 were for distributing five grams or more of cocaine base, in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Counts 4 and 8 were for

carrying a firearm during and in relation to the drug trafficking crimes set forth in

Counts 3 and 7 respectively, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Appellants were also charged individually. In Count 5, Richard was charged

with distributing a detectable amount of marijuana in violation of 21 U.S.C.

§§ 841(a)(1) and (b)(1)(D), and, in Count 6, he was charged with carrying a

firearm during and in relation to the drug trafficking crime set forth in Count 5, in

violation of 18 U.S.C. § 924(c)(1)(A)(i). In Count 9, Max was charged with

distributing a detectable amount of cocaine base, in violation of 21 U.S.C.

§§ 841(a)(1) and (b)(1)(C), and, in Count 10, he was charged with possession of a

firearm in furtherance of the drug trafficking crime set forth in Count 9, in

violation of 18 U.S.C. § 924(c)(1)(A)(i).

At trial, appellants challenged several evidentiary rulings made by the

district court that are thus preserved for appellate review. At the start of the trial,

the government introduced evidence about a burglarized pawn shop from which

thirty-three firearms were stolen. Appellants objected, but the government replied

that the burglary helped the government tell the story of the weapons trafficking

3

charges, because the burglary explains from where the appellants obtained the guns they were dealing.

Subsequent to the pawn shop burglary, Richard was stopped, and a weapon stolen from the pawn shop was discovered on him. Richard claimed the weapon was sold to him by others, but the police decided to pursue Richard as a lead in the burglary. They used an undercover informant, who had prior dealings with Richard, to attempt to purchase guns and drugs. Over the course of the informant's dealings with appellants, the charged quantities of drugs and several guns from the pawn shop were recovered.

One of these exchanges occurred on 19 June 2002. Prior to the meeting between the informant and the appellants, the informant and the car in which the meeting was to take place were searched to ensure that neither contraband drugs nor firearms were in the car. At one point in the meeting, the police officers observing the transaction got nervous about the length of time the meeting was taking and called the informant on his cell phone. The officer testified at trial about the conversation he heard between the informant and the appellants.[1] Most of the statements were incontestably admissible as coconspirator statements, however, at one point, the officer testified that the informant said, "Put all that stuff

---

[1] The informant was killed before trial and was, therefore, unable to testify.

behind the seat." R14-233 at 52. After the meeting concluded, the informant

returned the car to the police. The subsequent search of the car yielded several

weapons and almost 10 grams of cocaine base.

After this six-day trial, appellants were found guilty of all charges. Max

received a 757-month sentence, which was at the bottom of the applicable

Guideline range and consisted of a 97-month sentence for the drug offenses and a

statutorily mandated consecutive 660-month sentence for the firearm offenses.

Richard received a 768-month sentence, which was at the bottom of the applicable

Guideline range and consisted of a 108-month sentence for the drug offenses and a

consecutive 660-month sentence for the firearm offenses.

The appellants raise several issues for our consideration on appeal. First,

they argue that the admission of testimony regarding the uncharged burglary was

impermissible use of evidence of unrelated bad acts that was also unfairly

prejudicial to the appellants. Second, appellants argue that the officer's testimony

about what the informant said during the 19 June 2002 meeting constituted

impermissible hearsay and violated their rights under the Confrontation Clause.

Third, appellants argue that the evidence in the case does not support conviction on

charges related to using a firearm in the course of narcotics trafficking. Finally,

appellants argue, for the first time on appeal, that the district court erred in light of

5

United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), by applying the Sentencing Guidelines as mandatory to determine their sentences. We address these issues in turn.

## II. DISCUSSION

A. Background Evidence

Appellants argue that the district court erred when it admitted evidence regarding the burglary of a pawn shop. Appellants argue that this evidence is prejudicial evidence of past bad acts whose admission violates Federal Rule of Evidence 404(b). The government responds that this evidence is necessary background information that helps tell the story of the crime and is otherwise inextricable from evidence regarding the charged crimes.

Evidence of uncharged criminal activities is inadmissible unless the uncharged acts arose from the same transaction, are necessary to complete the story of the crime, or are inextricably intertwined with the evidence regarding the charged offense. United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000). Even if the evidence meets one of these exceptions, it may still be excluded if "its probative value 'is substantially outweighed by the danger of unfair prejudice.'" United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir. 1992) (quoting Fed. R.

6

Evid. 403).

Our review of such evidentiary questions is deferential. We will not disturb a district court's decision regarding a Rule 404(b) determination absent an abuse of discretion. United States v. Baker, 432 F.3d 1189, 1205 (11th Cir. 2005). The district court concluded that the brief testimony regarding the pawn shop burglary was inexorably intertwined with the charged offenses, because it explains where the appellants obtained the guns that they were selling. Although we might have categorized this background information as necessary to tell the story of the crime, the exceptions to the general rule overlap in places, and the district court's determination that this background information fell within one of the Jiminez exceptions was not an abuse of discretion. Nor is district court's conclusion regarding prejudice—that the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice—an abuse of discretion, because there is no unfair danger that this evidence would have improperly affected the jury's ability to objectively consider the evidence for its admitted purpose.

B. Testimonial Evidence

Appellants raise two claims of error regarding certain testimony elicited at trial, one a hearsay objection and the other a Confrontation Clause objection under

Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004). Given the doctrinal

uncertainty regarding Crawford, we follow the general approach taken in United

States v. Abdelazz, 144 Fed. Appx. 821 (11th Cir. 2005) (per curiam). In

Abdelazz, we bracketed the tricky constitutional question—what constitutes a

testimonial statement for Confrontation Clause purposes—by first asking whether

the putative Confrontation Clause error was harmless beyond a reasonable doubt.

Id. at 827 (citing United States v. Candelario, 240 F.3d 1300, 1307 (11th Cir.

2001)). After concluding that the assumed constitutional error was harmless

beyond a reasonable doubt, we observed that the hearsay objection regarding the

same statement is also harmless, because the nonconstitutional error is subject to a

less demanding standard than the constitutional error. Id. at 829 (citing United

States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005); United States v.

Mathenia, 409 F.3d 1289, 1292 (11th Cir. 2005) (per curiam)).

Thus, for the resolution of this case, we assume the statement violated the

Confrontation Clause and then must determine whether the violation is harmless

beyond a reasonable doubt. The Supreme Court has provided some guidance,

observing that whether

> an error is harmless in a particular case depends upon a host of
> factors, all readily accessible to reviewing courts. These factors
> include the importance of the witness' testimony in the
> prosecution's case, whether the testimony was cumulative, the

8

presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438 (1986).

Here, appellants concede that the only out of court statement that might violate their Confrontation Clause rights is the one overheard by the officer at the 19 June 2002 meeting between them and the informant. The officer testified that the informant said, "Put all that stuff behind the seat." R14-233 at 52. We conclude that this statement was unnecessary to the government's case, because the car and informant were clean before the meeting, and the car had weapons and drugs in it after the meeting. Also, the officer testified that the informant's car was never out of sight and that the informant interacted only with the appellants. R12-232 at 50. Thus, the physical evidence of the guns and drugs is overwhelmingly strong evidence of that day's transaction, and only the weakest of inferences from the hearsay statement—that, because the informant was sent to get drugs and guns from the appellants, the "stuff" of the informant's out of court statement must be guns or drugs—supports a finding of an element of a charged crime. The physical evidence so greatly outweighs the probative value of the out of court statement that we conclude its influence on the jury was at best cumulative to the physical evidence. Because only the appellants could have provided the guns and drugs to

9

the informant given the observations made by police officers, the statement regarding the location of the drugs inside of the car was irrelevant to an element of the charged crime.

Because the testimony asserted to violate appellants' confrontation rights is at worst irrelevant and at best cumulative to the physical evidence, we conclude that, even if the admitted evidence violated the Confrontation Clause, the error is harmless beyond a reasonable doubt. Because we find that the admission of the statement to be harmless beyond a reasonable doubt with regard to its constitutional implications, it follows that the error was also harmless under the lower standard applicable to the nonconstitutional hearsay error.

C. Sufficiency of the Evidence

Appellants challenge neither their convictions for firearms trafficking nor those for drug trafficking. They do assert that the government did not prove several counts related to 18 U.S.C. § 924(c)(1)(A), which provides an increased mandatory minimum punishment when "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." Thus, there are two separate ways to violate the statute: to use or carry a firearm during and in relation to a drug

trafficking crime or to possess a firearm in furtherance of a drug trafficking crime.

Appellants concede that the charges involving guns used for protection during drug transactions violate the statute. They assert, however, that they could not be convicted when guns were only sold with drugs. This contention is plainly refuted in United States v. Timmons, 283 F.3d 1246 (11th Cir. 2002). In Timmons, we noted that the terms "use" and "carry" were to be broadly construed such that the weapon need not be on the person and that "during and in relation to" means either facilitates the drug offense or has the potential to facilitate the offense. 283 F.3d at 1250–51. Noting that "the purpose of the statute is to combat the dangerous combination of drugs and guns," we affirmed the jury's verdict in Timmons when the defendant brought the gun and drugs to the point of sale in a shoebox. Id. at 1251–52. We conclude that the same result obtains here. Even if appellants were "only" selling guns and drugs together, the jury still could reasonably conclude that a firearm was used during and in relation to a drug trafficking crime because of the dangerous combination of guns and drugs throughout the preparation, negotiation, and transaction of the deal.

D. Booker Error

In this appeal, the appellants challenge only the mandatory application of the

Guidelines, which has become known as "statutory" <u>Booker</u> error. <u>See</u> <u>United States v. Shelton</u>, 400 F.3d 1325, 1326 (11th Cir. 2005) (differentiating between <u>Booker</u> "constitutional" error and "statutory" error involving treatment of the Guidelines as mandatory). Because this claim was not raised in the district court, we review the appellants' statutory <u>Booker</u> claim for plain error. <u>See</u> <u>Shelton</u>, 400 F.3d at 1328.

Under the plain error standard, an appellate court may not correct an error the defendant failed to raise in the district court unless there is "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." <u>United States v. Cotton</u>, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002) (applying plain error review to a claim under <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S. Ct. 2348 (2000), raised only on appeal) (quotations and citation omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." <u>Id.</u> (quotations and citation omitted). The Supreme Court has instructed that plain error review should be used only "in those circumstances in which a miscarriage of justice would otherwise result." <u>United States v. Olano</u>, 507 U.S. 725, 736, 113 S. Ct. 1770, 1779 (1993) (quotations and citation omitted).

In <u>Shelton</u>, we found that the district court plainly erred by treating the

12

Guidelines as mandatory. See 400 F.3d at 1331. In vacating and remanding Shelton's case for resentencing, we observed that the district court clearly expressed its disagreement with the severity of Shelton's sentence, which was caused by his criminal history calculation under the Guidelines. See Shelton, 400 F.3d at 1332–33. Shelton, therefore, proved that there was a reasonable probability that there would have been a different outcome if the Guidelines had not been mandatory in his case. Id. at 1332.

As for the fourth prong of the plain error test, we determined that "plain error affecting substantial rights does not, without more, satisfy the plain-error test, for otherwise the fourth prong and the discretion afforded by the fourth prong would be illusory." Id. at 1333. In examining the fourth prong of the plain error test, we noted that, even after Booker, "the district court was, and still is, bound by the statutory minimums." Id. at 1333 n.10. Nonetheless, we concluded that the facts of that case warranted exercise of the court's discretion to remand for resentencing. Id. at 1333.

In the this case, we have the same kind of error that Shelton previously declared plain, so the first two prongs of the plain error test are met. As for the third prong of the plain error test, the appellants had the burden of showing that this pre-Booker error affected their substantial rights. See Cotton, 535 U.S. at 631,

13

122 S. Ct. at 1285; <u>Shelton</u>, 400 F.3d at 1331. The district court's discretion to impose a lower sentence was severely limited by the applicable law requiring consecutive sentences for the firearm offenses, and <u>Booker</u> did not affect that obligation. See <u>Shelton</u>, 400 F.3d at 1333 n.10.

The court, however, expressed its view that the appellants' sentences were excessive and noted its obligation to apply the then-mandatory Guidelines sentence as to the drug offenses. If the district court had treated the Guidelines as advisory as to the drug offenses, the record supports the conclusion that the sentences would have been lower, because the court would have been able to sentence the appellants as low as to the statutory mandatory minimum sentence of 720 months. Because Max actually received a 757-month sentence and Richard actually received a 768-month sentence, the appellants have met their burden of showing an effect on their substantial rights, because, if the Guidelines been treated as advisory, the court could have sentenced them to over three years less, and there is a reasonable probability that the court would have done so.

As for the fourth prong of the plain error test, the district court expressed its desire to impose a sentence below the low end of the Guideline range by (1) expressing its disagreement with the appellants' sentences, (2) stating that it was bound by the Guidelines, and (3) stating during Richard's sentencing that it would

14

sentence Richard differently if it had the discretion to do so.  See Shelton, 400 F.3d at 1333–34.  These statements by the court indicate to us that the error in this case affects the fairness and integrity of judicial proceedings, and, therefore, the appellants have satisfied the fourth prong of the plain-error test.

## III.  CONCLUSION

Max and Richard Daniel have appealed their convictions and sentences for several firearm and drug offenses.  The district court's admission of background information related to the burglary was not an abuse of discretion.  We have set aside the tricky Confrontation Clause question, concluding that the admission of certain hearsay evidence is harmless beyond a reasonable doubt.  Furthermore, the evidence in the case does support conviction on charges related to using a firearm in the course of narcotics trafficking.  Thus, we **AFFIRM** the convictions. However, because the district court applied the Sentencing Guidelines in a mandatory fashion, we **VACATE** the original sentences and **REMAND** for resentencing.