[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 00-15795

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 26, 2002
THOMAS K. KAHN
CLERK

D.C. Docket No. 99-00674-CR-1-1-WBH

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

CLIFFORD TIMMONS,

Defendant-Appellee.

———————————————

No. 00-16326

———————————————
D.C. Docket No. 99-00674-CR-1-1-WBH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLIFFORD TIMMONS,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Georgia

**(February 26, 2002)**

Before ANDERSON, Chief Judge, BLACK, Circuit Judge, and MORENO*,
District Judge.

MORENO, District Judge:

This appeal concerns the sufficiency of the evidence at trial of two separate charges of possessing a firearm illegally, as well as a challenge to the sentence imposed pursuant to guilty pleas to drug offenses. The defendant appeals the refusal of the district court to grant a post-verdict judgment of acquittal on Count One, which charged the defendant with using and carrying a firearm on October 23, 1998 "during and in relation to" a drug trafficking crime in violation of 18 U.S.C. § 924(c). The government appeals the same district court's grant of a post-verdict judgment of acquittal on Count Two, which charged the defendant with possession of a firearm on November 12, 1999 "in furtherance of" drug trafficking in violation of another section of the same statute.

We find the evidence sufficient as to both counts. Therefore, we affirm the district court's judgment as to Count One but reverse as to Count Two and remand

---

*Honorable Federico A. Moreno, U.S. District Judge for the Southern District of Florida, sitting by designation.

for sentencing on the November 12, 1999 firearm possession charge, "in furtherance of" drug trafficking. We also vacate the sentence for the underlying drug offenses because it included a weapon enhancement for the possession of the weapons that were part of the same course of conduct for which the defendant has been convicted.

## I. PROCEDURAL HISTORY

On August 8, 2000 the grand jury returned a second superseding indictment, which charged Clifford Timmons with three counts of violating 18 U.S.C. § 924(c). Count One charged Timmons with using and carrying a 9mm semi-automatic handgun on October 23, 1998 "during and in relation to" a drug trafficking crime. Count Two charged Timmons with possessing on November 12, 1999, a .380 caliber handgun "in furtherance of" a drug trafficking crime. Count Three, charging Timmons with possessing a semi-automatic assault weapon "in furtherance of" a drug trafficking crime, was dismissed prior to trial.

Before trial, Timmons pled guilty to possessing crack cocaine with intent to distribute it on both October 23, 1998 and November 12, 1999. Thus, only the firearm counts, "during and in relation" to the October 23, 1998 drug trafficking, and "in furtherance" of the drug trafficking on November 12, 1999, were tried before a jury. The jury returned a verdict of guilty on both counts. Subsequently, Timmons filed a

renewed motion for judgment of acquittal on both counts. The court denied the motion for judgment of acquittal on Count One but granted judgment of acquittal on Count Two. Both Timmons and the government appeal these orders.

Pursuant to Timmons' guilty plea, he was sentenced to 115 months imprisonment on the drug crimes. He was also sentenced to a consecutive five year term on Count One, the firearm possession "during and in relation" to the October 23, 1998 drug trafficking. Even though the district court found the evidence insufficient as to the November 12, 1999 firearms possession "in furtherance" of a drug trafficking crime, it used the evidence of such possession to enhance by two levels the sentence on the drug trafficking crimes to which Timmons had pled guilty. Timmons appeals the sentence on the drug counts claiming error in the enhancement.

## II. FACTUAL BACKGROUND

### I. The October 1998 Incident (Count One)

On the morning of October 5, 1998, Investigators Tullis and Brown from the Atlanta Police Department Gang Unit went to Lakewood Village Apartments in an undercover capacity. The investigators drove into the apartment complex in an undercover vehicle, and were approached by several males who offered to sell them marijuana and crack cocaine. One of the individuals who was present but did not

4

participate in the sale was Clifford Timmons.

The officers also agreed to purchase a handgun later that day from two men, "Shorty" and "Black." While attempting to purchase the gun, a situation developed between the undercover officers and the gun sellers. At this point, Timmons approached and diffused the situation by taking the handgun from the individuals and removing the clip and all the bullets from the gun. He then gave the clip to the officers, received the money and gave them the gun. Shortly after completing this gun sale, Timmons offered to sell the undercover officers another handgun with a laser sight for $300. The officers and Timmons agreed to do future business and Timmons gave the officers his beeper number and code.

On October 23, 1998, during a subsequent recorded telephone conversation, Timmons again offered to sell the undercover officers a handgun with a laser sight for $300. The portion of the transcript of the October 23, 1998 sale of the gun reads:

> Officer R. Tullis:   You got something?
> Clifford Timmons:       Yeah I got something.
> Tullis:                     Hey, uh, you got that, uh, laser?
> Timmons:       Yeah I still got it.
> Tullis:                     You still got it?
> Timmons:       Yeah.
> Tullis:                     You wanna get rid of it today?
> Timmons:       Yeah I'll get rid of it today.

R4-29 at 1.

Timmons claims that he did not explicitly discuss the sale of drugs on October

5

5, 1998. The Government points out, however, that Timmons was not surprised when the undercover officers asked about getting two "slabs" ($200 worth of drugs) during their phone conversation of October 23, 1998. The relevant portion of the transcript from that conversation reads:

> Officer R. Tullis: Okay, what about, uh, that breakdown we, we discussed?
> Clifford Timmons: The breakdown?
> Tullis: Yeah.
> Timmons: Yeah I got that too.
> Tullis: Uh, cause uh myself and my partner we got like two...
> Timmons: Uh-uh.
> Tullis: ...that the wanna, we wanna try to get like uh two, you can't give us two slabs?
> Timmons: Yeah I can get for you.

R4-28 at 2.

The sale as negotiated was completed later that day after Officer Tullis met Timmons in the quad area of Lakewood Apartments. Timmons approached the car and handed the investigator a shoe box containing a Lorcin pistol and 2.3 grams of crack cocaine. The officers handed Timmons the $300 for the pistol and then $200 for the crack cocaine. The officers drove off after completing the sale.

## II.    The November 1999 Incident (Count Two)

On November 12, 1999, agents of the Bureau of Alcohol, Tobacco and Firearms obtained a warrant to arrest Timmons and to search his apartment. The warrant was executed at 8:30 p.m. that evening. When the officers arrived, Timmons was standing

outside between his apartment and the apartment next door. Timmons was arrested outside his apartment and agents recovered a cellular telephone and a pager from his person and a two-way radio from the ground a few feet away. Inside the apartment, the officers recovered photographs and documents confirming that it was his apartment.

In the living room was a stove top oven. On top of the oven were two fully loaded firearms, an Intratec Model A B10 9mm luger and a Lorcin model 380. Inside the oven was an empty ammunition box of 9mm cartridges. In a closet next to the living room, agents found a bullet-proof vest. In addition, agents found crack cocaine and $350 inside a drawer under the stove. A clear plastic baggy with individual hits of crack cocaine was found under the cushions of the couch. Six individually packaged rocks of crack cocaine were recovered from a shoe of Timmons' size located in the bedroom of the apartment. In total, agents found 35.67 grams of crack cocaine in Timmons' apartment.

## III. ANALYSIS

Both counts that were the subject of the trial and this appeal involve 18 U.S.C. § 924(c) which reads in pertinent part:

> (1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person

7

who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime— (i) be sentenced to a term of imprisonment of not less than 5 years[.]

This version of § 924(c) was passed in 1998 in response to the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501 (1995). *See United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001); *United States v. Ceballos-Torres*, 218 F.3d 409, 413 (5th Cir. 2000). The Supreme Court "has described the statute's basic purpose broadly, as an effort to combat the 'dangerous combination' of 'drugs and guns.'" *Muscarello v. United States*, 524 U.S. 125, 132, 118 S.Ct. 1911, 1916 (quoting *Smith v. United States*, 508 U.S. 223, 240, 113 S.Ct. 2050, 2060 (1993)).

As Timmons pled guilty to the two underlying counts of possession with intent to distribute cocaine, the issues left for trial were: (1) whether Timmons used or carried a 9mm semi-automatic handgun on October 23, 1998, "during and in relation to" a drug trafficking crime, and (2) whether on November 12, 1999, Timmons possessed a .380 caliber handgun "in furtherance of" a drug trafficking crime. We find sufficient evidence as to both counts. Therefore, we affirm the district court's denial as to Count One (the October 23, 1998 charge) but reverse the judgment of

acquittal on Count Two (the November 12, 1999 charge), remanding it for sentencing on that count pursuant to the jury's guilty verdict. In addition, because we find that the district court erred when it included a weapon enhancement in its sentence on the drug counts, we vacate that sentence and remand for re-sentencing.

## I.    The § 924(c) Conviction for Use or Carrying of a Firearm "During and in Relation To"    a Drug Trafficking Offense

Timmons challenges the conviction on Count One, which involved using or carrying a 9mm semi-automatic handgun on October 23, 1998 "during and in relation" to a drug trafficking crime. To sustain this conviction the government must have sufficient evidence on both the "uses or carries" prong and the "during and in relation to" prong. Evidence is sufficient to support a conviction where "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979).

### A.    "Use or Carry" Under § 924(c)

The government need only show either that Timmons used *or* carried the firearm during and in relation to the drug trafficking crime, not both. Here, we need not reach whether there was "use" of the firearm because the facts clearly prove the "carry" element. We similarly conclude that any error in instructing the jury on "use" is of no consequence since there is sufficient evidence on the "carry" prong.

9

The Supreme Count in *Muscarello* adopted the primary meaning for the word "carry," defining it as to "convey, originally by cart or wagon, hence in any vehicle, by ship, on horseback, etc." *Muscarello*, 524 U.S. at 128, 118 S.Ct. at 1914. The *Muscarello* Court ultimately held that "[g]iven the ordinary meaning of the word 'carry,' it is not surprising to find that the Federal Courts of Appeals have unanimously concluded that 'carry' is not limited to the carrying of weapons directly on the person but can include their carriage in a car." *Id.* at 131, 118 S.Ct. at 1916 (citations omitted). *See also United States v. Wilson*, 183 F.3d 1291, 1295 (11th Cir. 1999) (finding a firearm on the dashboard of the vehicle in which the defendant was apprehended sufficient to support a finding that the defendant was "carrying" a firearm); *United States v. Range*, 94 F.3d 614, 618 (11th Cir. 1996) (finding that the firearm under the floor mat of the car the defendant drove to the site of a drug transaction was sufficient to support a jury verdict that defendant was "carrying" a firearm).

The government's case against Timmons is stronger than it was against the defendants in *Wilson* and *Range*. On October 23, 1998, Timmons carried a shoe-box that contained both the gun and the drugs *in his hands*. Given that the facts clearly indicate that Timmons "carried" the firearm, even if the evidence was insufficient to sustain a conviction under the "use" prong as defined by the Supreme Court in *Smith*

10

*v. United States*, 508 U.S. 223, 237, 113 S.Ct. 2050, 2058 (1993) and *Bailey*, 516 U.S. at 146, 116 S.Ct. at 507, we must affirm the conviction, so long as the evidence sufficiently supports the "during and in relation to" element of § 924(c). *See Wilson*, 183 F.d at 1298 (affirming the conviction holding that error committed in defining use was of no moment as the evidence supported a conviction under the "carry" element of § 924(c)).

## B. "During and in Relation To" under § 924(c)

The inclusion of the "during and in relation to" requirement of § 924(c) was intended to be a limiting phrase to "prevent the misuse of the statute [from] penaliz[ing] those whose conduct does not create the risks of harm at which the statute aims." *Muscarello*, 524 U.S. at 139, 118 S.Ct. at 1919. There is little question that to the extent that an offense occurred, it happened "during" the commission of a drug offense as the gun was sold along with the drugs. Timmons' challenge therefore rests on whether the carrying of the firearm occurred "in relation to" a drug trafficking offense. In *Smith* the Supreme Court defined "in relation to" as follows:

> The phrase "in relation to" thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence. As one court has observed, the "in relation to" language "allay[s] explicitly the concern that a person could be" punished under § 924(c)(1) for committing a drug trafficking offense "while in possession of a firearm" even though the firearm's presence is coincidental or entirely "unrelated" to the crime. Instead, the gun at least

11

must "facilitat[e], or ha[ve] the potential of facilitating," the drug trafficking offense.

*Smith*, 508 U.S. at 238, 113 S.Ct. at 2058-59 (internal and subsequent citations omitted).

The *Smith* Court also directed that, "[t]he phrase 'in relation to' is expansive, as the Courts of Appeals construing § 924(c)(1) have recognized." *Id*. at 237, 113 S.Ct. at 2058 (internal citation omitted). The *Smith* Court ultimately determined:

> The fact that a gun is treated momentarily as an item of commerce does not render it inert or deprive it of destructive capacity. Rather, as experience demonstrates, it can be converted instantaneously from currency to cannon. We therefore see no reason why Congress would have intended courts and juries applying § 924(c)(1) to draw a fine metaphysical distinction between a gun's role in a drug offense as a weapon and its role as an item of barter; it creates a grave possibility of violence and death in either capacity.

*Id*. at 240, 113 S.Ct at 2060 (internal citation omitted).

In this case, the evidence demonstrates that the gun was not there "coincidentally," nor was "entirely unrelated" to the drug crime. If the gun did not facilitate the drug offense, it certainly had the "potential of facilitating" the drug offense. The evidence revealed that on the morning of October 23, 1998, the undercover officers and Timmons finalized the negotiations for the gun by determining that it was still available and that Timmons would sell it that day, and then proceeded to arrange for the sale of $200 worth of crack cocaine. Timmons

12

brought the gun and the drugs together to the officers in a shoe-box. If indeed the purpose of the statute is to combat the dangerous combination of drugs and guns, as *Muscarello* held, and Timmons combined the drugs and gun in a single shoe-box in what essentially amounts to a single transaction, as the jury found, it would flout the purpose of the statute to hold anything but that the gun was carried "during and in relation" to the drug offense.

## II. The Post-Verdict Judgment of Acquittal on the "In Furtherance Of" Requirement of 18 U.S.C. § 924(c)

Timmons challenged and succeeded in convincing the district court that the evidence was insufficient for a conviction based on the firearm possession "in furtherance of" a drug-trafficking offense pursuant to 18 U.S.C. § 924(c). Timmons does not challenge that the firearms were in his possession. The basis of his claim is that there was insufficient evidence that the firearms were possessed "in furtherance of" drug trafficking. We analyze here, for the first time, the sufficiency of the evidence required to support a conviction for possession of a firearm in a "furtherance of" a drug trafficking crime.

We start with the language of the statute. The word "furtherance" should be given its plain meaning where as here it is not defined within the statute. *See Muscarello*, 524 U.S. at 128, 118 S.Ct. at 1914. "Furtherance" means "a helping

13

forward." Webster's Third New International Dictionary 924 (1981). Thus, a conviction under this portion of § 924(c) requires that the prosecution establish that the firearm helped, furthered, promoted, or advanced the drug trafficking.

Further, we agree with the Fifth and Sixth Circuits' determination in *Ceballos-Torres*, 218 F.3d at 415, and in *Mackey*, 265 F.3d at 461, that the plain meaning of "furtherance" is consistent with the legislative intent of the amendment and not in violation of the canons of statutory construction. To properly understand this 1998 amendment to § 924(c), we must look to the reason for its genesis. In 1995, the Supreme Court in *Bailey*, 516 U.S. at 143, 116 S.Ct. at 505, narrowed the definition of "use" under § 924(c), holding that "§ 924(c)(1) requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Id.* The legislative history indicates that the amended versions of the statute added the phrase criminalizing possession "in furtherance of" a drug trafficking crime in order to "revers[e] the restrictive effect of the *Bailey* decision." H.R. Rep. 105-344, at 6 (1997). The House Judiciary Committee explained, "[t]he word 'possession' has a broader meaning than either 'uses' or 'carries' . . . . In order to sustain a conviction under § 924(c), the government must prove that a firearm was possessed 'in furtherance of' the commission of the federal crime of violence or drug trafficking offense." *Id.* The

14

congressional analysis elaborated on what the prosecution must show.

> The government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. Rather, the government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity.

> The facts of the *Bailey* decision, reiterated above, proved a good example. The Committee believes that the evidence presented by the government in that case may not have been sufficient to sustain a conviction for possession of a firearm "in furtherance of" the commission of a drug trafficking offense. In that case, a prosecution expert testified at Mr. Bailey's trial that drug dealers frequently carry a firearm to protect themselves, as well as their drugs and money. Standing on its own, this evidence may be insufficient to meet the "in furtherance of" test. The government would have to show that the firearm located in the trunk of the car advanced or promoted Mr. Bailey's drug dealing activity. The Committee believes that one way to clearly satisfy the "in furtherance of" test would be additional witness testimony connecting Mr. Bailey more specifically with the firearm.

*Id*. at *12.

Thus, the plain meaning of § 924(c), uncontradicted by the accompanying legislative intent, dictates that the presence of a gun within the defendant's dominion and control during a drug trafficking offense is not sufficient by itself to sustain a § 924(c) conviction. As the Second Circuit explained in *United States v. Finley*, 245 F.3d 199, 202 (2d Cir. 2001), there must be "a showing of some nexus between the firearm and the drug selling operation." *Id*. The nexus between the gun and the drug

operation can be established by "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found." *Ceballos-Torres*, 218 F.3d at 414-15; *accord Mackey*, 265 F.3d at 462. While these factors are not exclusive, they "distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *Id*.

The facts of this case are similar to those of either *Ceballos-Torres* or *Mackey*. *See Ceballos-Torres*, 218 F.3d at 411 (involving a loaded 9mm gun found in the open on defendant's bed, which defendant claimed was for personal protection, along with 569.8 grams of cocaine and $1,360 found nearby in a bedroom closet); *Mackey*, 265 F.3d at 462 (involving an illegally possessed, loaded, short-barreled shotgun in the living room located near the scales and razor blades in a house from which the defendant sold drugs). Yet, after considering the evidence in light of the relevant factors, we find that the evidence against Timmons (bullet proof vest, crack cocaine on the stove and under the cushions of the couch, two fully loaded firearms on top of the oven and ammunition inside the oven in the living room of his apartment) was sufficient for the jury to have concluded that Timmons was guilty of possessing the

16

firearms "in furtherance of" drug trafficking.[1]  Therefore, the district court erred in setting aside the guilty verdict.

## III.  Sentencing Enhancements

Finally, we address Timmons' appeal of the district court's sentence for the drug offenses to which Timmons pled guilty.  Timmons argues, and the government concedes, that the district court erred in applying a two-level enhancement to Timmons' sentence.  The district court applied the enhancement  pursuant to USSG § 2D1.1(b)(1), based on the two weapons seized pursuant to the November 12, 1999 search warrant.  The commentary to USSG § 2K2.4 states, however, that a sentence imposed for a conviction under 18 U.S.C. § 924(c) accounts for any enhancement that would apply to the underlying offense based on any relevant conduct for which the defendant is accountable.  Timmons contends that the October 23, 1998 and November 12, 1999 drug charges are relevant conduct to each other under § 1B1.3 of the Sentencing Guidelines because they are part of the same course of conduct or

---

[1]Timmons moved to strike references in the government's brief to expert testimony showing that drug dealers keep guns.  Because the district court gave an instruction to the jury limiting this testimony to show that the drugs were for distribution rather than personal use, the testimony could not have been used by the jury to determine whether the firearms were possessed "in furtherance of" the drug trafficking offense.  We therefore grant Timmons' motion to strike.  However, we find that there was sufficient evidence even without this expert testimony.

Likewise, Timmons' motion to file a supplemental letter brief is granted.

17

common scheme or plan. We agree. Therefore, because Timmons was convicted and sentenced for violating § 924(c) by possession of a firearm during and in relation to the drug-trafficking crime he committed in October 23, 1998, and in accordance with this opinion will be sentenced on the firearm possession of November 12, 1999, the district court is precluded from applying a weapons enhancement pursuant to USSG § 2D1.1(b)(1) to the underlying drug charges. When a defendant is convicted of a § 924(c) violation as well as an underlying offense, his possession of a weapon cannot be used to enhance the level of the underlying offense. *United States v. Diaz*, 248 F.3d 1065, 1107 (11th Cir. 2001).

## IV. CONCLUSION

Accordingly, we affirm the district court's judgment with respect to Count One but vacate and remand with directions to reinstate the conviction of Count Two. We also vacate Timmons' sentence for the drug offenses and remand for re-sentencing consistent with this opinion.

**AFFIRMED, VACATED AND REMANDED.**