[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 12, 2007
THOMAS K. KAHN
CLERK

No. 07-11750
Non-Argument Calendar

_____

D. C. Docket No. 06-00241-CR-CG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JORGE LARIOS-MONTES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(October 12, 2007)**

Before DUBINA, CARNES and WILSON, Circuit Judges.

PER CURIAM:

Jorge Larios-Montes pled guilty to one count of unlawful transportation of

an illegal alien, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).  He now appeals his sentence of 18 months' imprisonment.

Larios-Montes and a codefendant transported 13 illegal aliens in a 13-passenger van that had been modified to accommodate up to 16 people.  The two defendants had agreed to transport the aliens from California and Arizona to Alabama, Georgia, and Maryland.  At the time the United States Border Patrol stopped them, Larios-Montes was driving and the codefendant was in the front passenger seat.  In taking the codefendant out of the van, the patrol discovered that the codefendant had been sitting on a folded knife, positioned in the center of the seat.  The knife was 4-4.5 inches folded, and 8-8.5 inches extended.  The two defendants had previously switched roles as driver/passenger twice during the trip.  Two of the passengers stated that they were afraid, and that they had been restricted in stopping, eating, and using the bathroom.  The van stopped twice for food during the trip.

On appeal, Larios-Montes argues that the district court clearly erred in applying an enhancement, pursuant to U.S.S.G. § 2L1.1(b)(5)(C), for possessing a dangerous weapon.  Larios-Montes claims that (1) the knife was not in furtherance of the crime, and (2) it was not reasonably foreseeable to him that his codefendant had a knife.

We review a district court's factual findings for clear error, and the application of the guidelines to those facts *de novo*. *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006) (citation omitted). A factual finding is clearly erroneous when we are "left with a definite and firm conviction that a mistake has been committed" after a review of all the evidence. *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotation and citation omitted).

If a dangerous weapon was possessed while smuggling or transporting an illegal alien, the guidelines call for a 2-level increase, or an increase to level 18, whichever is higher. U.S.S.G. § 2L1.1(b)(5)(C). A defendant's offense level is determined in part on the conduct of his codefendant when the other's acts are: (1) reasonably foreseeable; and (2) in furtherance of the jointly undertaken criminal activity. U.S.S.G. § 1B1.3(a)(1)(B).

We have not defined when something is "in furtherance" of a conspiracy under § 1B1.3(a)(1)(B), but we have held, in the context of 18 U.S.C. § 924(c),[1] that "furtherance" should be given its plain meaning when it is not defined in the statute. *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002). There, we held that the government must prove that "the firearm helped, furthered, promoted, or advanced the drug trafficking" in order to establish that it was

---

[1] Section 924(c) increases the minimum sentence for an individual who possesses a firearm "in furtherance of" crimes of violence or drug trafficking. 18 U.S.C. § 924(c).

possessed in furtherance of the crime. *Id*. The government must show, through specific facts, "that the firearm was possessed to advance or promote the criminal activity." *Id.*

We have held that it is a factual question whether a co-conspirator's acts were reasonably foreseeable, and the government must show "reasonable foreseeability" by a preponderance of the evidence. *United States v. Cover*, 199 F.3d 1270, 1274 (11th Cir. 2000). To meet its burden, the government only has to prove that an act was "a necessary or natural consequence of the unlawful agreement," not that the defendant expressly agreed to his codefendant's act. *Id.* at 1275 (quotation omitted).

Upon review of the record as a whole, we find no reversible error. At sentencing, the government proffered the testimony of Border Patrol Agent Matroy Browder, who was involved in the stop of the defendants. Browder testified as to the location and length of the knife, the switching of driver/passenger responsibilities, and the conditions that the passengers were exposed to during the trip. Upon consideration of this testimony and the record evidence, the district court made the following finding:

> [I]t's the finding of the Court that . . . it would be reasonably foreseeable that this defendant knew about the presence of that knife. A person doesn't normally sit on a knife unless they want to have it readily accessible. It was not in the man's pocket, which indicates to me that he wanted to have

4

it where he could get to it fairly soon. He didn't put [it in] the pocket in the door, he didn't . . . put it in the glove compartment. He had it available to him if he needed it. And under the circumstances where the two were switching out being driver and passenger, it seems very unlikely that this defendant would not have known that the other driver, or the person who was then in the passenger seat, had access to that knife because of the way it was being transported.

   And as a matter of fact it seems most likely to me that whoever was sitting in the passenger seat was to have had access to that weapon for whatever control it would have been necessary for had that become an event. That's the most likely scenario to me, given the fact that the man was sitting on the knife that's a rather large knife.

   . . . .

   . . . [T]hese two gentlemen were transporting 15 illegal aliens and a situation may have arisen where they felt the need to protect themselves either from the passengers or from anybody approaching the van. . . . [G]iven the entire situation and the fact that the passenger—the codriver— was sitting on the knife, it is more likely than not that it was foreseeable that they needed a weapon and that one was present and that he was most likely aware of it.

(R71-12, 14.)

In light of the need to restrict the incidents of stopping, eating, and using the bathroom, and the fact that at least two of the passengers professed to being afraid, it is not a stretch to infer that an intimidating atmosphere was imposed by the defendants within the van. Given the location of the knife (center of front passenger seat) and the switching of roles between the defendants as driver/passenger, we cannot say that the district court was *clearly erroneous* in finding that possession of the knife was reasonably foreseeable to Larios-Montes and in furtherance of the transportation of the aliens. Accordingly, we affirm.

   **AFFIRMED.**

5