[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12140
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 6, 2011
JOHN LEY
CLERK

D. C. Docket No. 8:09-cr-00340-JDW-AEP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALBERT VAZQUEZ,

Defendant-Appellant.

_____

No. 10-12725
Non-Argument Calendar
_____

D. C. Docket No. 8:09-cr-00340-JDW-AEP-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESSE VAZQUEZ,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____
(June 6, 2011)

Before PRYOR, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Albert and Jesse Vazquez (collectively "defendants") appeal their convictions and sentences for conspiracy to possess with intent to distribute and distributing 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Defendants argue that the evidence was insufficient to sustain their convictions for conspiracy to distribute and for possession of a firearm in furtherance of a drug trafficking crime. Albert Vazquez also argues that the district court erred in calculating the amount of cocaine attributable to him at sentencing. After

2

thorough review, we affirm defendants convictions and sentences for conspiracy to distribute and possession of a firearm in furtherance of a drug trafficking crime.

## I.

We review de novo whether the evidence was sufficient to sustain a conviction. United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009). We "view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." United States v. Martinez, 83 F.3d 371, 374 (11th Cir. 1996). "We will not overturn a conviction on grounds of insufficient evidence 'unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004) (quoting United States v. Christo, 129 F.3d 578, 579 (11th Cir. 1997)).

## A.

"To sustain a conviction for conspiracy to distribute narcotics the government must prove (1) that an agreement existed between two or more people to distribute the drugs; (2) that the defendant at issue knew of the conspiratorial goal; and (3) that he knowingly joined or participated in the illegal venture." United States v. Brown, 587 F.3d 1082, 1089 (11th Cir. 2009) (quotation marks omitted). "If a defendant's actions facilitated the endeavors of other co-

conspirators, or facilitated the venture as a whole, a single conspiracy is established." Id. (quotation marks omitted).

Mere presence in the location where a narcotics transaction took place is insufficient to sustain a conspiracy to distribute conviction. United States v. Sullivan, 763 F.2d 1215, 1218–19 (11th Cir. 1985) (holding evidence that defendant drove to parking lot and walked inside hotel with other men who were involved in a marijuana transaction insufficient); see also United States v. Hernandez, 896 F.2d 513, 519–20 (11th Cir. 1990) (holding evidence that defendant was present in and around the car from which narcotics were delivered insufficient even when paired with "flight" from scene); United States v. Pintado, 715 F.2d 1501, 1505 (11th Cir. 1983) (holding evidence that defendant was hiding in a closet in a bedroom of the house where the marijuana transaction took place insufficient). Nor is mere association with conspirators sufficient evidence to establish knowing participation in a conspiracy. See Sullivan, 763 F.2d at 1218.

The government presented evidence establishing more than defendants' mere presence at the location of the narcotics transaction and association with conspirators. At trial, Adam Longoria, one of defendants' alleged coconspirators, testified that he participated in a narcotics transaction during the time frame charged in the indictment involving a kilogram of cocaine with Richard Caraballo

4

and defendants. Longoria also testified that he arranged the meeting with Caraballo and potential buyers at which the group agreed to carry out the narcotics transaction at Caraballo's house that law enforcement raided on December 10, 2008. Longoria and an undercover detective both testified that at this meeting Longoria and Caraballo told the buyers that Caraballo's cocaine suppliers were from Bradenton, Florida and would be present at the December 10 transaction. The government established that defendants are from Bradenton and were in Caraballo's home on December 10 watching the prearranged drug transaction from an adjoining room. No one else other than defendants, Caraballo and the buyers were inside Caraballo's house around the time of the drug transaction. Viewing the evidence in the light most favorable to the government, we conclude that the government established that defendants knowingly participated in a drug conspiracy.

## B.

Defendants next challenge their convictions for possession of a firearm in furtherance of a drug trafficking crime. See 18 U.S.C. § 924(c). "The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence." United States v. Timmons, 283 F.3d 1246, 1252 (11th Cir. 2002) (quotation marks omitted). "Rather, the

5

government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity." Id. A "nexus between the gun and the drug operation can be established by . . . accessibility of the firearm, . . . whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found." Id. at 1253 (quotation marks omitted).

When undercover detectives arranged the December 10, 2008 drug deal, Caraballo warned the officers that everyone at the transaction would be "strapped," i.e., carrying a firearm. Although Longoria never saw Albert Vazquez holding a gun on December 10, he testified that he saw Albert peek out of the door of Caraballo's house while touching his waistband in a manner that made Longoria think that Albert had a firearm. Longoria also testified that when the drug deal did not go as planned, Albert became angry, touched his waistband again and told Longoria that "[you are] lucky [I] don't pop your ass."

When law enforcement raided Carabello's house immediately after the transaction, they found a loaded firearm in the sofa near where Albert Vazquez was lying on the floor in the room adjoining the one in which the narcotics transaction took place. A fingerprint analyst confirmed that Jesse Vazquez's palm print was on the magazine of that gun. Law enforcement also found Jesse

6

Vazquez lying on a bed in a back room of Caraballo's house with an empty gun holster beside him. Law enforcement found a firearm, which Jesse's girlfriend had purchased, and a box of ammunition in the same room. Further, Longoria testified that he had observed Jesse Vazquez holding a rifle during a previous drug transaction.

In light of this record, and our duty to construe the evidence in the government's favor, we conclude that the government established that defendants possessed firearms in furtherance of drug trafficking crimes. Defendants had easy access to loaded guns which were inside the same house in which a narcotics transaction was underway. See United States v. Mercer, 541 F.3d 1070, 1077 (11th Cir. 2008) (finding sufficient evidence for § 924(c) conviction where a loaded semi-automatic handgun was hidden in a pouch under the mattress in defendant's hotel room and "items commonly used in drug operation" were in the immediate vicinity). Caraballo and Longoria made the presence of these firearms known when they warned the undercover detectives that everyone at Caraballo's house during the transaction would be carrying a firearm. The evidence is sufficient to sustain defendants' convictions under § 924(c).

II.

Albert Vazquez next argues that the district court erred in including in its sentencing calculation a kilogram of cocaine from a drug transaction separate from the one that law enforcement raided on December 10.[1]  "We review for clear error the district court's factual findings related to the imposition of sentencing enhancements . . . ."  United States v. Robertson, 493 F.3d 1322, 1329 (11th Cir. 2007) (quotation marks omitted).  The clear error standard "requires us to affirm a district court's findings of fact unless the record lacks substantial evidence to support that determination."  Drew v. Dep't of Corrs., 297 F.3d 1278, 1283 (11th Cir. 2002) (quotation marks omitted).

Substantial evidence supports the district court's attribution of the contested kilogram of cocaine to Albert Vazquez.  At trial Longoria testified that prior to December 10, Vazquez supplied a kilogram of cocaine for a narcotics transaction but called it off at the last minute because the buyer did not have the money to purchase the drugs.  Even after defense counsel cross-examined Longoria, the

---

[1] Jesse Vazquez attempts to adopt "all the arguments and issues raised by [Albert Vazquez], insofar as they inure to [his] benefit."  Jesse Vazquez does not specifically challenge the amount of cocaine attributed to him.  Because the district court's determination of the amount of cocaine attributable to each defendant was individualized, Jesse Vazquez may not merely adopt by reference Albert Vazquez's arguments on this issue.  Cf. United States v. Cooper, 203 F.3d 1279, 1285 n.4 (11th Cir. 2000) ("Sufficiency arguments however are too individualized to be generally adopted.").

district court found Longoria's testimony "believable and credible with respect to this transaction." As the district court observed, this transaction occurred within the time frame of the conspiracy charged in the indictment.

The district court was free to consider Longoria's testimony about Vazquez's prior narcotics transaction. Under the sentencing guidelines, a district court is required to determine the guideline range by taking into account "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1)(A) (Nov. 2009). A sentencing court may consider any relevant conduct under § 1B1.3 that the government established at trial by a preponderance of the evidence. See United States v. Hristov, 466 F.3d 949, 954 n.6 (11th Cir. 2006). We therefore conclude that the district court did not clearly err in attributing the kilogram of cocaine from the prior transaction to Vazquez at sentencing.

For these reasons, we AFFIRM defendants sentences and convictions.

AFFIRMED.