[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12419
Non-Argument Calendar
_____

D.C. Docket No. 2:11-cr-00066-JES-DNF-2


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BARRY FRANZ VERDIEU,
JOHN PETERSON ALEXIS,

Defendants - Appellants.


_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(May 30, 2013)

Before MARCUS, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Barry Verdieu and John Alexis appeal their convictions for carrying a firearm in relation to, or possessing a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.  Verdieu and Alexis each argue that the evidence at trial was insufficient to sustain their convictions for this offense.

## I.  FACTS AND PROCEDURAL HISTORY

On June 22, 2011, Verdieu rented a Chevrolet Traverse sport utility vehicle from Enterprise Car Rental in West Palm Beach, Florida.  Two days later, on June 24, Verdieu and Alexis drove the Traverse to the Edison Mall in Fort Meyers where Alexis had arranged to purchase 3,000 oxycodone pills for $10,500 from a confidential informant (CI) cooperating with the Drug Enforcement Administration (DEA).  DEA agents and local law enforcement officers were waiting for Verdieu and Alexis at the mall.

After parking the Traverse in the mall parking lot, Verdieu and Alexis entered the mall, where Alexis met the CI in the food court.  When Alexis failed to persuade the CI to conduct the drug sale in the parking lot, Alexis and Verdieu returned to the Traverse so that Alexis could retrieve the cash.  Verdieu then remained in the car while Alexis went back to the food court to finish the transaction.

At the food court Alexis and the CI prepared to exchange "a big wad of cash" for a bag of pills. The transaction was interrupted when Alexis "received a phone call from someone . . . and abruptly got up and . . . left." Alexis returned to the Traverse, where Verdieu was waiting in the driver's seat, and got in the front passenger side.

At this point DEA agents moved in and arrested the pair. As agents were handcuffing Verdieu, one asked him if he had any guns. Verdieu responded that he had one in the back seat of the Traverse, in a laptop computer bag. Although the agents did not find the gun in the back seat or the laptop bag, they found a fully loaded .38 caliber semi-automatic pistol between the driver's seat and the front passenger seat, in the Traverse's open center console. The firearm was located alongside a partially unwrapped sandwich, an open bottle of water, a camera case, a phone charger, and a CD. The gun was positioned in such a way that it could be easily withdrawn from the Traverse's console by either the driver or the front passenger. The agents also found $10,500 in Verdieu's pants pocket.

Verdieu and Alexis were each charged with conspiring to possess and distribute oxycodone, in violation of 21 U.S.C. § 846, and carrying a firearm in relation to, or possessing a firearm in furtherance of, a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. Alexis pleaded guilty to the

3

conspiracy charge, but proceeded to trial on the gun charge; Verdieu proceeded to trial on both counts.

At trial, following the government's case-in-chief, the defendants each moved for judgments of acquittal on their respective firearm charge, arguing that the government failed to produce sufficient evidence to show that the pistol was more than "coincidentally" present in the Traverse. The district court denied the motion and the jury convicted each defendant of all counts. On its special verdict form, the jury indicated that it found Verdieu and Alexis guilty of violating § 924(c) both because the pair carried a firearm in relation to their attempt to purchase oxycodone, and because they possessed a firearm in furtherance of their attempt to purchase oxycodone. This appeal followed.

## II. DISCUSSION

On appeal, Verdieu and Alexis each argue that the evidence was insufficient to sustain the jury's verdicts on their firearm convictions because the government failed to "show some nexus between the firearm and the drug selling operation."

"We review de novo a District Court's denial of judgment of acquittal on sufficiency of evidence grounds, considering the evidence in the light most favorable to the Government, and drawing all reasonable inferences and credibility choices in the Government's favor." United States v. Capers, 708 F.3d 1286, 1296 (11th Cir. 2013). "A jury's verdict cannot be overturned if any reasonable

4

construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." United States v. Herrera, 931 F.2d 761, 762 (11th Cir. 1991). "The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989). But "[w]hen the government relies on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction." United States v. Mendez, 528 F.3d 811, 814 (11th Cir. 2008).

Section 924(c) states, in pertinent part, "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime," be subject to enhanced penalties enumerated in the statute. 18 U.S.C. § 924(c)(1)(A). "Thus, the enhanced penalties are triggered in one of two ways: under the 'during and in relation to . . . uses or carries' prong, or under the 'in furtherance of . . . possesses' prong." United States v. Haile, 685 F.3d 1211, 1217 (11th Cir. 2012) (quoting § 924(c)(1)(A)), cert. denied, 133 S. Ct. 1723 (2013) & 133 S. Ct. 1724 (2013). Because our de novo review satisfies us that the evidence was sufficient to convict Verdieu and Alexis under the "in furtherance of . . . possesses" prong, we do not

5

consider whether it was also sufficient to convict them under the "during and in relation to . . . uses or carries" prong. See § 924(c)(1)(A).

To prove that a defendant possessed a firearm "in furtherance of" a drug trafficking crime, "the prosecution [must] establish that the firearm helped, furthered, promoted, or advanced the drug trafficking." United States v. Timmons, 283 F.3d 1246, 1252 (11th Cir. 2002). This requires "a showing of some nexus between the firearm and the drug selling operation." Id. at 1253 (quotation marks omitted). To determine whether such a "nexus" exists, we consider a non-exclusive list of factors, including:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found.

Id. (quotation marks omitted).

Verdieu and Alexis argue that the government failed to prove a nexus between the gun found in the center console and the oxycodone deal because "mere presence of a firearm at the time of the underlying federal crime is insufficient to support a [§] 924(c) conviction." While we certainly agree that as a matter of law proof of "mere presence of a firearm in an area where a criminal act occurs" is not sufficient to prove a violation of § 924(c), Timmons, 283 F.3d at 1252 (quotation marks omitted), here the evidence went beyond proof of "mere

6

presence." Specifically, the loaded .38 caliber semiautomatic pistol was found in the rented Traverse's center console, within inches of where Verdieu and Alexis were sitting at the time of their arrests, readily accessible to each. Verdieu, sitting in the driver's seat, was found with $10,500 in his pocket, the precise amount negotiated for the 3,000 oxycodone pills that Alexis intended to purchase from the CI. Alexis, sitting in the passenger seat, had repeatedly attempted to persuade the CI to leave the food court and to conduct the drug transaction outside, where Verdieu and the pistol were waiting. The jury heard testimony that when DEA agents arrested the pair, the center console was open and the firearm was located next to a partially unwrapped sandwich and an opened bottle of water. And although Verdieu lawfully purchased the firearm in September 2010, the jury also learned that Verdieu's concealed weapon permit was expired at the time of purchase, and at the time of this offense.

In sum, this evidence is sufficient to establish a nexus between the pistol and the drug transaction because a reasonable jury could conclude that Alexis intended to lure the CI to the parking lot, where Verdieu was waiting with the gun. In turn, the evidence is sufficient to prove that Verdieu and Alexis possessed the pistol in furtherance of their conspiracy to possess and distribute oxycodone. See Haile, 685 F.3d at 1219–20; Timmons, 283 F.3d at 1253. On this record, the district

7

court properly rejected their motions for judgment of acquittal, and we will not reverse their § 924(c) convictions here.

## III.CONCLUSION

For these reasons, Verdieu's and Alexis's § 924(c) convictions are

**AFFIRMED.**

8