[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10104

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BREON D. HICKS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cr-80040-RLR-1

_____

Before NEWSOM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Following a jury trial, Breon Hicks appeals his convictions for possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3).[1]  He argues that the district court erroneously instructed the jury as to the § 924(c) count on which he was convicted,[2] and that there was insufficient evidence to support his § 922(g)(3) conviction.  After review, we affirm.

## I.    Background

A grand jury charged Hicks in a superseding indictment with nine drug- and firearm-related counts: (1) possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) (Counts 1, 3, 5, 6, and 9); (2) possession of firearm—a Masterpiece Arms Model MPA 57, 5.7 x 28 mm semi-automatic pistol—in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2); (3) possession of a firearm—a Glock Model 17, 9mm semi-automatic pistol—in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)

---

[1] The jury also found Hicks guilty of six other drug-related and firearm counts, but he does not appeal those convictions.  Therefore, this opinion will focus only on the two convictions Hicks challenges on appeal.

[2] Hicks was acquitted of one § 924(c) count.

(Count 4); (4) possession of one or more firearms while being an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3) (Count 7); and (5) knowingly making a false statement on a firearms application in violation of 18 U.S.C. § 924(a)(1)(A) (Count 8).

Briefly, at trial, as relevant to the convictions on appeal, the evidence established that, following a police surveillance operation in 2019, Hicks, who was a suspected drug dealer, was pulled over as part of a traffic stop. During the stop, officers discovered five pounds of marijuana in the vehicle, over two thousand dollars in cash, a box of 9-millimeter hollow point ammunition, and a loaded Glock 17 under the driver's seat. In a post-arrest interview— portions of which were played for the jury at trial—Hicks stated that he initially thought when he was pulled over that he was being robbed because the officer was in an unmarked car and wearing a ski mask, and Hicks considered reaching for the gun to protect himself.

Upon execution of search warrants on the two residences connected with Hicks,[3] police discovered additional boxes and receipts for other guns, various types of ammunition, a loaded Masterpiece Arms Model MPA 57 semi-automatic pistol in Hicks's

---

[3] The police searched Hicks's residence and the residence of his then-girlfriend, Jada Brody, which police had observed Hicks visit on numerous occasions while surveilling him.

girlfriend's bedroom closet, large quantities of marijuana, a digital scale, plastic baggies, and a vacuum sealing device.[4]

Jada Brody, Hicks's girlfriend at the time of the traffic stop, testified that Hicks dealt marijuana and that he carried a gun every day that she saw him.[5]  She said Hicks used the firearms to protect himself and their home from anyone who might try to rob him. She explained that she smoked marijuana, but Hicks did not use marijuana around her.

Hicks testified in his own defense and admitted the marijuana and guns were his and that he sold "small quantities of marijuana."  However, he denied any connection between his guns and his drug activity.  He maintained that he did not need firearms during his drug sales because he dealt with "high end clientele"

---

[4] The evidence from the traffic stop and the search of the residences served as the basis for Counts 1–5, and 7.  Because Hicks appeals his convictions on Counts 4 and 7, we focus primarily on this evidence.  Nevertheless, we note that, in May 2020, hotel staff at a Courtyard Marriott in Florida discovered a large amount of marijuana in a hotel room rented by Hicks.  Hotel staff contacted the police and officers seized approximately 22 pounds of marijuana from the room.  This evidence formed the basis of Count 9.  And in October 2020, police arrested Hicks at an outlet mall, pursuant to an arrest warrant, and found a bag filled with marijuana in the trunk of his vehicle, which formed the basis of Count 6.

[5] Both the government and defense counsel brought to the jury's attention that Hicks's ex-girlfriend was facing a separate drug charge for possession of a large amount of fentanyl, which carried a significant sentence, and that she was testifying in hopes of getting a reduced sentence.

who were "not violent people." He explained that he had a "friendly" relationship with his clients.

Hicks stated that the guns were for protection because he had previously been the victim of a violent crime and "for the [gun] range." But he admitted that he would have used the guns to defend himself if necessary. He denied ever being robbed or threatened over his marijuana business. He explained that, on the day of the traffic stop, he left Brody's house with the Glock and put it in his car. He stated that he was distracted and forgot that he had the Glock under the driver's seat when he was pulled over because he had been "with a woman that wasn't [his] girlfriend" that day. He maintained that the Glock had nothing to do with the marijuana in the vehicle. He also admitted to using marijuana, but stated that he was "not accustomed to smoking" and did not do it often.[6] When confronted with his post-arrest statement to police following the traffic stop, in which he stated that he used marijuana multiple times every day, Hicks explained that he had "exaggerated a little bit."

As relevant to the § 924(c) charges (Counts 2 and 4) for possession of a firearm in furtherance of a drug-trafficking crime, Hicks requested that the court add to the pattern jury instruction that "[t]he mere presence of a firearm in an area where a criminal act occurred is not sufficient to meet the 'in furtherance of'

---

[6] Hicks also stated that he had a medical marijuana card, but officers testified that they could not find any record of Hicks having a medical marijuana card.

6                    Opinion of the Court                    22-10104

requirement."[7]  The government objected to the addition of the proposed language, arguing that it was not an accurate reflection of the law and likely to cause confusion among the jurors.  The district court concluded that the pattern instruction accurately

---

[7] The pattern jury instruction provides as follows:

> It's a separate Federal crime to possess a firearm in furtherance of a . . . [drug-trafficking crime].
>
> The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:
>
> 1. that the Defendant committed the . . . [drug-trafficking crimes] charged in Count __ of the [Superseding] Indictment; and
>
> 2. that the Defendant knowingly possessed a firearm in furtherance of that crime, as charged in the [Superseding] Indictment.
>
> A "firearm" is any weapon designed to or readily convertible to expel a projectile by the action of an explosive.  The term includes the frame or receiver of any such weapon.
>
> To "possess" a firearm is to have direct physical control of the firearm or to have knowledge of the firearm's presence and the ability and intent to later exercise control over the firearm.
>
> Possessing a firearm "in furtherance of" a crime means that the firearm helped, promoted, or advanced the crime in some way.

Eleventh Circuit Pattern Jury Instruction O35.3 (first and second alteration in original).

reflected the law, and it declined to include Hicks's proposed language. However, the court explained that Hicks's counsel could make the "mere presence" argument to the jury in closing. The district court later provided the pattern instruction to the jury.

During closing arguments, Hicks's counsel argued that the "mere presence" or mere possession of a gun in relation to criminal activity was not sufficient to support the § 924(c) charges. Rather, the government had to prove beyond a reasonable doubt that Hicks "did something with the gun in furtherance of his" drug dealing. His counsel then emphasized that the guns were for protection because Hicks was previously "a victim of a crime," and the guns had "nothing to do with narcotics." With regard to the Glock discovered during the traffic stop, his counsel pointed out that Hicks forgot the gun was in the car at that time but, regardless, the government had not shown that the gun was in furtherance of the drug activity.[8]

Following deliberations, the jury convicted Hicks of Count 1 and Counts 3 through 9, and acquitted him of Count 2 (the § 924(c) charge based on the Masterpiece Arms firearm found in a closet during a search of his home). This appeal followed.

---

[8] Following the government's case-in-chief and again at the close of the evidence, Hicks moved for a judgment of acquittal on all counts, which the district court denied.

## II.    Discussion

Hicks argues that the district court erroneously instructed the jury as to the § 924(c) charge, and that there was insufficient evidence to support his § 922(g)(3) conviction.  We address each argument in turn.

### A.  The § 924(c) Jury Instruction

Hicks argues that the district court erroneously crafted its own instruction for the § 924(c) counts, and "in essence, instructed the [j]ury that mere connection between the firearm and a drug trafficking crime could support a conviction."  He maintains that this was a misstatement of the law.  As we explain further, Hicks's claim is belied by the record.

When, as here, a defendant preserved an objection to the jury instructions, "[w]e review de novo the legal correctness of jury instructions but review the phrasing of the instructions for abuse of discretion." *United States v. Focia*, 869 F.3d 1269, 1280 (11th Cir. 2017).  Importantly, "[j]ury instructions need not be perfect, and we review the instructions in light of the entire charge and do not isolate individual statements in order to contrive error." *United States v. Ruan*, 56 F.4th 1291, 1296 (11th Cir. 2023) (quotations omitted).  "[W]e will not reverse a conviction . . . unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process." *Focia*, 869 F.3d at 1280 (quotations omitted).

Here, the district court gave the pattern jury instruction for the § 924(c) charges, which included the statement that

"[p]ossessing a firearm 'in furtherance of' a crime means that the firearm helped, promoted, or advanced the crime in some way." Although Hicks maintains that the instruction erroneously permitted the jury to convict him if there was only a "simple connection" between the guns and the marijuana, the jury instruction accurately conveyed the law and did not mention anything about merely requiring a "connection" between the guns and the drug activity.

Specifically, § 924(c) prohibits using or carrying a firearm in relation to a drug-trafficking crime as well as possessing a firearm in furtherance of a drug-trafficking crime. 18 U.S.C. § 924(c)(1)(A). The statute does not define what it means to be in furtherance of a drug-trafficking crime, but we have held that "a conviction under this portion of § 924(c) requires that the prosecution establish that the firearm helped, furthered, promoted, or advanced the drug trafficking." *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002). Thus, the jury instruction provided in this case accurately stated the law.[9]

---

[9] Hicks argues that the jury instruction was "a far cry from" the standard set forth in the Supreme Court's *Bailey* decision, but his reliance on *Bailey* is misplaced. Specifically, in *Bailey*, the Supreme Court held that the term "use" in § 924(c)(1) required evidence to show "an *active employment* of the firearm by that defendant"—mere proximity and accessibility did not suffice. *Bailey*, 516 U.S. at 143. As we explained in *Timmons*, however, following the *Bailey* decision, Congress amended § 924(c) and added the "in furtherance of" portion of the statute. *Timmons*, 283 F.3d at 1252. Hicks was convicted under the "in furtherance of" provision of § 924(c), which does not require active employment of the firearm. Instead, as we explained in *Timmons*, under this

To the extent that Hicks quarrels with the district court's decision not to include his requested language in the instruction that "[t]he mere presence of a firearm in an area where a criminal act occurred is not sufficient to meet the 'in furtherance of' requirement," the district court concluded that the pattern instruction accurately stated the law and that the addition of the requested language could generate confusion among the jury. We cannot say this was an abuse of discretion.

Nevertheless, even assuming arguendo that Hicks is correct that the instruction was erroneous because it failed to specify that the mere presence of a gun was insufficient to sustain a § 924(c) conviction under the "in furtherance of" portion of the statute, we conclude that any error was harmless. *Focia*, 869 F.3d at 1280 (explaining that jury instructions are "subject to harmless error review," and "[a]n error is harmless if the reviewing court is satisfied beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" (quotations omitted)). Hicks argued to the jury throughout his closing that the mere presence of a gun was not sufficient and that the government failed to prove that either of the guns charged in Count 2 and Count 4 were connected to his drug activity. The jury clearly understood that the mere presence of a firearm was insufficient as a matter of law to sustain a § 924(c) conviction under the in furtherance of provision because it acquitted Hicks of Count 2. In other words,

---

provision, "the prosecution [must] establish that the firearm helped, furthered, promoted, or advanced the drug trafficking." *Id.*

the acquittal demonstrates that the jury agreed with Hicks that the government failed to meet its burden of showing a connection between the Masterpiece Arms semi-automatic pistol charged in Count 2—which was found in the master bedroom closet—and the drug activity. On the other hand, the jury disagreed with Hicks that the government failed to show a connection between the Glock found under his driver's seat during the traffic stop and the marijuana in the vehicle, as evidenced by the fact that the jury convicted him of Count 4.[10]

### B. The § 922(g)(3) conviction

Hicks argues that the government failed to present sufficient evidence to sustain his § 922(g)(3) conviction for possessing a

---

[10] We note that the nexus between the gun and the drug trafficking, "can be established by the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, . . . whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstance under which the gun is found." *Timmons*, 283 F.3d at 1253 (quotations omitted). Here, although Hicks testified that the Glock found during the traffic stop was not related to the marijuana, the jury was free to disbelieve this testimony. *United States v. Williams*, 390 F.3d 1319, 1325 (11th Cir. 2004) (explaining that "when a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true" (quotations omitted)). Furthermore, the jury could have found a nexus between the gun and the drug activity based on Brody's testimony that Hicks carried a gun every day, the fact that the Glock was loaded and under Hicks's driver's seat, and it was in close proximity to the marijuana in the vehicle. *Timmons*, 283 F.3d at 1253; *see also Williams*, 390 F.3d at 1323 (explaining that "[a] jury is free to choose among reasonable constructions of the evidence" and "[a]ll credibility choices must be made in support of the jury's verdict").

firearm while being an unlawful user of marijuana.  He notes that, although he admitted during his testimony to using marijuana, he never said how much or how often, and there was no evidence that he used marijuana on the date of his arrest, at the time he purchased firearms, or at any time when he was in possession of firearms.

"We review sufficiency-of-the-evidence challenges de novo, making all factual and credibility inferences in the government's favor."  *United States v. Curtin*, 78 F.4th 1299, 1305 (11th Cir. 2023) (alteration adopted) (internal citation omitted) (quotations omitted).  "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt."  *United States v. Capers*, 708 F.3d 1286, 1297 (11th Cir. 2013) (quotations omitted).  "The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial."  *Id.* (quotations omitted).

Under § 922(g)(3), it is "unlawful for any person . . . who is an unlawful user of or addicted to any controlled substance . . . to . . . possess in or affecting commerce, any firearm of ammunition[.]"  18 U.S.C. § 922(g)(3).  The term "unlawful user" is not defined in the statute, *see id.*, and we have not adopted pattern instructions for § 922(g)(3) offenses.  We have, however, considered the definition of "unlawful user" in the context of a provision of the Sentencing Guidelines that cross-references

§ 922(g) offenses. *See United States v. Edmonds*, 348 F.3d 950, 953 (11th Cir. 2003).[11]  In that context, we held that to be an unlawful user of marijuana, "a defendant's use must be ongoing and contemporaneous with the commission of the offense."  *Id.* (quoting *United States v. Bernardine*, 73 F.3d 1078, 1082 (11th Cir.1996)).   However, we clarified that the government is not required to show that the use was simultaneous with the firearm possession or that the defendant was under the influence at the time of the possession.  *Id.*

Here, sufficient evidence was presented at Hicks's trial that he was an unlawful user of marijuana contemporaneously with his possession of firearms.  At Hicks's home and in his vehicle, officers discovered marijuana, and Hicks testified that he used marijuana. Although he never specified as part of his trial testimony how much he used or when he used marijuana, the government presented his post-arrest statement in which he told officers that he used marijuana multiple times every day.  The jury was entitled to credit this evidence over Hicks's trial testimony that this statement was simply an exaggeration and that he was not accustomed to

---

[11] In *Edmonds*, we interpreted § 2K2.1 of the guidelines, which provides for a specific base offense level if the offense involved a firearm and the person was a "prohibited person."  348 F.3d at 953 (citing U.S.S.G. § 2K2.1(a)(4)(B)).  And we explained that the guidelines defined a "prohibited person" by reference to any person described in § 922(g), which includes a person "who is an unlawful user of or addicted to any controlled substance."  *Id.* (quoting U.S.S.G. § 2K2.1, cmt. (n.6)—we note that (n.6) now appears as (n.3) in the current guidelines).

smoking marijuana.[12] *Williams*, 390 F.3d at 1325 (explaining that "when a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true" (quotations omitted)).  Accordingly, viewing the evidence in the light most favorable to the government, we conclude that Hicks's § 922(g)(3) conviction was supported by sufficient evidence.

**AFFIRMED.**

---

[12] Hicks also maintains that the government argued that he was addicted to marijuana, but that the government failed to prove such an addiction.  We need not address this argument because as discussed above § 922(g)(3) makes it "unlawful for any person . . . who is an unlawful user of or addicted to any controlled substance . . . to . . . possess in or affecting commerce, any firearm of ammunition."  Thus, the government needed to show either that Hicks was an unlawful user of a controlled substance or that Hicks was addicted to a controlled substance; it did not have to prove both.  And, here, the government presented sufficient evidence to show that Hicks was an unlawful user.