[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13374
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20645-KMW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GUILLERMO GABRIEL AGUILAR,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 22, 2013)

Before TJOFLAT, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Guillermo Aguilar appeals his convictions for one count of possession of

firearms by an illegal alien in violation of 18 U.S.C. § 922(g)(5)(A) ("Count

One"), one count of possession with intent to distribute a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1) ("Count Two"), and one count of possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count Three").  Aguilar also appeals the substantive reasonableness of his 93-month sentence.

After being indicted, Aguilar filed a motion to suppress evidence seized in violation of the Fourth Amendment as a result of a warrantless and consentless search of his home on December 29, 2010, that tainted the search pursuant to a state warrant on April 22, 2011.  The district court found that, on December 20, 2010, the U.S. Marshals, who were looking for a fugitive in an unrelated case, entered Aguilar's home with his consent and subsequently conducted a protective sweep.  The district court denied Aguilar's motion to suppress on this ground.  Further, the district court held that the warrant would stand even without Aguilar's consent and the information from the December 2010 search because the supporting affidavit also contained (1) the information from the U.S. Marshals before their entry into Aguilar's home, including that he had multiple surveillance cameras on the outside of his house and the fact that Aguilar was nervous when he answered the door; (2) the North Miami Police Department ("NMPD"), operating on an unrelated tip, observed buys from Aguilar in October 2010; and (3) the NMPD orchestrated three controlled buys from Aguilar in March and April 2011.

2

This information constituted probable cause for the search warrant even without the information obtained from the December 2010 search.

After a trial, the jury found Aguilar guilty on all three counts. At sentencing, Aguilar requested a downward variance based on multiple health and emotional issues and the five-year minimum for Count Three. The court sentenced Aguilar to 33 months as to Counts One and Two, to run concurrently, and 60 months as to Count Three, to run consecutively.

On appeal, Aguilar argues that (1) the district court erred by denying his motion to suppress evidence and finding that the December 2010 search of his residence was lawful pursuant to voluntary consent and that the April 2011 search of his residence was lawful pursuant to a valid state search warrant; (2) the district court erred by denying Aguilar's motion for a judgment of acquittal as to Count Three and finding that the evidence showed possession of a firearm "in furtherance of" a drug-trafficking offense; (3) his within-guidelines sentence was not substantively reasonable; and (4) the jury was required to rule on facts that would allow more than a minimum sentence to be imposed, based on the pending decision of the Supreme Court in *Alleyne v. United States*, 457 F. App'x 348 (4th Cir. 2011), *cert. granted*, 133 S. Ct. 420 (Oct. 5, 2012).

Following review of the record and consideration of the parties' briefs, we affirm.

3

I.

We review the denial of a motion to suppress as a mixed question of law and fact, reviewing legal questions *de novo* and factual questions for clear error. *United States v. Ramirez-Chilel*, 289 F.3d 744, 748-49 (11th Cir. 2002). The district court is in a better position to judge the credibility of witnesses before it, and we will not disturb the court's findings of fact unless its understanding of those facts appears "unbelievable." *Id.* at 749. We may consider evidence presented at both the hearing on the motion to suppress and at the trial, *United States v. Villabona-Garnica*, 63 F.3d 1051, 1056 (11th Cir. 1995), and the denial of a motion to suppress may be affirmed on any ground supported by the record. *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010). Similarly, we review *de novo* whether probable cause existed to support a search warrant, although we "take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *United States v. Martinelli*, 454 F.3d 1300, 1306 (11th Cir. 2006) (quotation omitted).

Generally, under the law of the Fourth Amendment, a search of the home or office is not reasonable without a warrant issued on probable cause. *Maryland v. Buie*, 494 U.S. 325, 331, 110 S. Ct. 1093, 1096-97 (1990). The Supreme Court found in *Buie*, however, that a protective sweep may be lawfully undertaken

4

pursuant to an in-house arrest where the officer "possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 337, 110 S. Ct. at 1099-100.

A second exception to the Fourth Amendment is a search conducted pursuant to voluntary consent. *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989). Consent is voluntary if it is "the product of an essentially free and unconstrained choice." *Id.* The government bears the burden of proving that consent was voluntary. *United States v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir. 1984). The totality of the circumstances must be considered when reviewing the voluntariness of consent. *Id.* Although no one factor is dispositive, we may consider factors such as the

> voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found.

*Id.* (quotation omitted). We determine whether an individual has sufficient comprehension of the English language to provide voluntary consent by examining the suspect's ability to interact intelligently with the police. *United States v. Zapata*, 180 F.3d 1237, 1242 (11th Cir. 1999).

5

In *United States v. Tovar-Rico*, we affirmed the district court's ruling that the consent was not voluntary. 61 F.3d 1529, 1536 (11th Cir. 1995). There, at least five officers knocked on the defendant's door and asked to enter. *Id.* at 1535. When the defendant opened the door, "the officers entered quickly with guns drawn to do the protective sweep." *Id.* (quotation omitted). After the officers entered each room, they asked for permission to again search the entire apartment. *Id.* The officers told the defendant that "she did not have to permit the further search, but if she did not, the agents would come back with a search warrant." *Id.* at 1536. The defendant consented to the search. *Id.* The magistrate judge, district court, and this Court agreed that because the defendant "had already observed officers explore every room in the apartment[, she] could not reasonably have known that she could still refuse a search." *Id.* Consent was not voluntary where it was "a mere submission to a claim of lawful authority." *Id.* (quotation omitted).

The defendant in *United States v. Garcia*, by contrast, did not merely submit "to a claim of lawful authority." 890 F.2d at 361. The defendant was arrested in his front yard in the presence of fourteen agents. *Id.* at 360. A group of the agents conducted a security sweep of the defendant's home. *Id.* After the defendant was arrested and searched for weapons, he led an officer to weapons inside his home. *Id.* The agents then asked for consent to search the defendant's home. *Id.* at 361. The defendant attempted to consent to a limited search, but the agents "refused this

6

conditional consent." *Id.*  The agents told the defendant that if he refused to consent to a search of the entire home, "they would have to secure the house and apply for a search warrant." *Id.*  The defendant responded that the agents could search his home. *Id.*  We held that this consent was voluntary, noting that it had "approved a finding of voluntariness when a defendant was under far more coercive conditions than" the defendant was in *Garcia*. *Id.*

The Fourth Amendment requires that there be probable cause to obtain a warrant and that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *Martinelli*, 454 F.3d at 1307.  The affidavit need not allege that any illegal activity occurred at the residence, but should provide a reasonable basis to conclude that the defendant "might keep evidence of his crimes at home, i.e., a safe yet accessible place." *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) (quotation omitted).  It should "establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Id.*  "Evidence that the defendant is in possession of contraband that is of the type that would normally expect to be hidden at their residence will support a search." *United States v. Anton*, 546 F.3d 1355, 1358

7

(11th Cir. 2008); *see also United States v. Jenkins*, 901 F.2d 1075, 1080-81 (11th Cir. 1990) (holding that the nexus between items to be seized and the defendant's home can be established circumstantially where contraband is capable of being hidden in the residence).

"[T]he information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues." *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000). There is no particular rule or time limit for when information becomes stale, and whether information is stale must be decided on the particular facts of each case. *Id.* at 1265. In deciding whether information presented in support of a warrant is stale, we examine the length of time, nature of the suspected crime, habits of the accused, character of the items sought, and nature and function of the premises to be searched. *Id.* In considering the nature of the crime, we distinguish between criminal activity that is protracted and criminal activity that is isolated. *Id.* If the affidavit "recites activity indicating protracted or continuous conduct, time is of less significance." *Id.* (quotation omitted). Stale information does not, however, void an affidavit where the government's affidavit "updates, substantiates, or corroborates" the stale material. *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994).

Here, Aguilar argues that the district court erred by denying his motion to suppress because the December 2010 search was not conducted pursuant to

8

voluntary consent and because officers did not have probable cause for their subsequent search of his home on April 22, 2011.  We disagree.  The district court did not err by denying the motion to suppress because the December 2010 search was done pursuant to voluntary consent and the search warrant affidavit established probable cause to believe that drug-related items would be found at Aguilar's home.

First, Aguilar argues that any consent he gave to a search of his house was not voluntary.  However, a review of the totality of the circumstances shows that Aguilar's consent was "essentially [a] free and unconstrained choice." *See Garcia*, 890 F.2d at 360.  Aguilar was not in custody. *See Chemaly*, 741 F.2d at 1352.  Aguilar did not immediately provide consent to search, but he did provide consent to the officers once they described the scope of the search. *See id.*  Although Aguilar testified that an officer told him that, if he did not consent, officers would seek a search warrant and that officers had their hands on their weapons, there is no evidence that this statement and those actions rose to the level of coercion.  These circumstances were much less coercive than in *Garcia*, where consent was voluntary even though the defendant consented after being arrested in the presence of fourteen agents, the agents conducted a security sweep of the defendant's home, the agents refused to accept defendant's consent to a limited search, and the agents told the defendant that if he refused to consent to the search, they would apply for a

9

search warrant and search his home. *See* 890 F.2d at 360-61. And, unlike the officers in *Tovar-Rico*, who conducted a protective sweep of every room with their guns drawn before asking for consent to search, the officers here merely stated, from the foyer of his house, that if Aguilar did not consent they would seek a search warrant. Accordingly, the government demonstrated that Aguilar's consent was voluntary and the district court did not err in refusing to suppress the results of this search.

Second, the totality of the circumstances supports "a conclusion that there [was] a fair probability of finding contraband or evidence" in Aguilar's house during the April 22, 2011, search pursuant to the search warrant. There was sufficient probable cause to search Aguilar's house when the evidence showed, *inter alia*, that (1) in October 2010, officers began surveillance of a restaurant and observed Aguilar engaging in what appeared to be drug transactions; (2) on December 29, 2010, officers conducted the search of Aguilar's house discussed above and observed drug paraphernalia in plain view; and (3) on March 8, March 11, and April 5, 2011, officers conducted three separate controlled buys of cocaine from Aguilar. The affidavit was issued on April 15, 2011, and it was executed on April 22, 2011. None of this information was stale because Aguilar was engaged in an ongoing drug-trafficking crime involving continuous conduct. *See Bervaldi*, 226 F.3d at 1265.

10

The district court did not err by denying Aguilar's motion to suppress.

## II.

We review *de novo* a district court's denial of a motion for judgment of acquittal on sufficiency of the evidence grounds. *United States v. Friske*, 640 F.3d 1288, 1290-91 (11th Cir. 2011). In making this determination, we consider "the evidence in the light most favorable to the Government, drawing all reasonable inferences and credibility choices in the Government's favor." *Id.*

Section 924(c) of Title 18 of the U.S. Code states, "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime" be subject to additional penalties enumerated in the statute. 18 U.S.C. § 924(c)(1)(A). We have interpreted "in furtherance of" to mean that the firearm "helped, furthered, promoted, or advanced the drug trafficking." *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002). Mere presence of a firearm in the defendant's "dominion and control" during the drug offense is insufficient by itself to constitute possession "in furtherance of" the drug-trafficking crime. *Id.* at 1253. Accordingly, it is important to "distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle

11

locked in a cupboard." *Id.* (quoting *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001)).

We consider a list of non-exclusive factors in determining whether there is "some nexus between the gun and the drug selling operation": (1) the type of drug activity being conducted; (2) accessibility of the firearm; (3) the type of the weapon; (4) whether the weapon is stolen; (5) the status of the possession (legitimate or illegal); (6) whether the gun is loaded; (7) proximity to the drugs or drug profits; and (8) the time and circumstances under which the gun is found. *Id.* (quotation omitted). We have recognized that "guns are a tool of the drug trade," and that there is a "frequent and overpowering connection between the use of firearms and narcotics traffic." *United States v. Cruz*, 805 F.2d 1464, 1474 (11th Cir. 1986). We have also recognized that a reasonable jury could infer "that the purpose of firearms, lying in plain view on a mattress next to substantial quantities of drugs, was 'to provide defense or deterrence in furtherance of the drug trafficking for which defendant was arrested.'" *United States v. Miranda*, 425 F.3d 953, 962 (11th Cir. 2005) (quoting *Mackey*, 265 F.3d at 462-63).

The district court did not err by denying Aguilar's motion for acquittal as to Count Three. Aguilar admits that the firearms were in the same room as the drugs, and he has provided no innocent reasons, such as the presence of a "wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *See Timmons*, 283

F.3d at 1253 (quotation omitted).  A reasonable jury was entitled to infer that three firearms in the same small bedroom as a substantial quantity of cocaine and various other drug paraphernalia—including a kilo compression, scales, plastic baggies, sifters, a breaker, and a cutting agent—were to provide "defense or deterrence in furtherance of the drug trafficking" for which Aguilar was arrested. *See Miranda*, 425 F.3d at 962; *Cruz*, 805 F.2d at 1474.  Accordingly, sufficient evidence supported Aguilar's § 924(c) conviction.

III.

We review the reasonableness of sentences imposed under the advisory sentencing guidelines under a deferential abuse of discretion standard.  *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).  We may "set aside a sentence only if we determine, after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable." *United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (en banc).

The district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, protect the public from the defendant's future criminal conduct, and provide the defendant with needed educational or vocational training or medical care.  *See* 18 U.S.C.

13

§ 3553(a)(2)(A)-(D).  In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

In reviewing the reasonableness of a sentence, we first ensure that the sentence was procedurally reasonable, meaning the district court properly calculated the guideline range, treated the guidelines as advisory, considered the § 3553(a) factors, did not select a sentence based on clearly erroneous facts, and adequately explained the chosen sentence.  *Gall*, 552 U.S. at 51, 128 S. Ct. at 597. Once we determine that a sentence is procedurally sound, we examine whether or not the sentence was substantively reasonable in light of the totality of the circumstances.  *Id.*

The party who challenges the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors.  *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).  Although we do not automatically presume a sentence falling within the guideline range to be reasonable, we ordinarily expect such a sentence to be reasonable.  *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008).  A sentence imposed well below the statutory maximum

14

penalty is another indicator of a reasonable sentence. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

We reverse only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)). For instance, a district court's unjustified reliance on any one § 3353(a) factor may be a symptom of an unreasonable sentence. *United States v. Crisp*, 454 F.3d 1285, 1291-92 (11th Cir. 2006).

Aguilar's sentence is substantively reasonable. The district court explicitly considered the 18 U.S.C. § 3553(a) factors at sentencing, including the specific facts raised by Aguilar on appeal. The court's decision to give a low-end sentence and not impose a variance was based on the need for deterrence, the need to promote respect for the law, and the nature of the crime. This finding was reasonable, especially in light of the items found in Aguilar's home—two bullet-proof vests, electric brass knuckles, narcotics, and weapons. Aguilar has not shown that the court's decision to impose a low-end sentence was unreasonable based on his health problems. *See Hunt*, 526 F.3d at 746.

IV.

15

*Alleyne v. United States* presents the question of whether *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406 (2002), should be overruled. *Harris* held that "brandishing" a firearm for purposes of 18 U.S.C. § 924(c)(1)(A)(ii) was a sentencing factor, rather than an element of the crime, and that allowing a judge to find that factor did not violate the defendant's constitutional rights. 536 U.S. at 556, 568, 122 S. Ct. at 2414, 2420 (plurality). In *Harris*, the government charged the defendant under 18 U.S.C. § 924(c)(1)(A), but the indictment made no mention of brandishing or of subsection (ii). *Id.* at 551, 122 S. Ct. at 2411. At stake in *Alleyne* are laws in which a legislature decides that some aspects of a specific crime justify a sentence longer than the bottom of the range and dictate a mandatory add-on sentence that is still within the maximum range but may be more than the judge otherwise would have selected.

We reject Aguilar's challenge to his sentence based on the pending decision in *Alleyne* because Aguilar raises this argument solely to preserve it and because any decision in *Alleyne* would be inapplicable to Aguilar. Even if the Supreme Court were to overrule *Harris*, it would have no effect on Aguilar's sentence because the jury found Aguilar guilty of all of the factors necessary to require the five-year mandatory minimum for Count Three.

V.

16

For the foregoing reasons, and after a thorough review of the parties' briefs and the record, we affirm.[1]

**AFFIRMED.**

---

[1]    Aguilar's motion to dismiss appellate counsel and appoint new counsel is DENIED.