**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-10938

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

HASSAN JONES,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:23-cr-00126-JB-N-1

————————————————

Before JORDAN and NEWSOM, Circuit Judges and CORRIGAN,* District Judge.

---

* Honorable Timothy J. Corrigan, Senior United States District Judge for the Middle District of Florida, sitting by designation.

NEWSOM, Circuit Judge:

On December 19, 2025, the panel issued its opinion affirming in part and vacating in part Hassan Jones's convictions. *United States v. Jones*, 162 F.4th 1114 (11th Cir. 2025). After considering the government's petition for panel rehearing, we vacate our earlier opinion and issue this one in its place. Our holding is unchanged. The only modifications to our opinion are in Part II.B.1, clarifying that while we conclude that the prosecutor engaged in reversible misconduct by relying on an unadmitted exhibit during his closing argument, we are prepared to assume that he did not deliberately seek to mislead the jury.

Our revised opinion follows:

This case requires us to decide whether Hassan Jones was properly convicted of several drug- and gun-related crimes.

Police found a bunch of evidence that Jones had engaged in a variety of criminal conduct. First, during a traffic stop, officers found Jones and two associates with a gun, drugs, and cash. Next, following Jones's traffic-stop arrest, officers searched his cellphone and discovered photographs, videos, texts, and notes implicating him in drug-dealing activities. Then, after executing a search warrant at Jones's apartment, officers found two more guns (one of them a machine gun), ammunition, two more incriminating cellphones, and a small quantity of drugs. Finally, in Jones's girlfriend's car, officers discovered distribution amounts of marijuana. The government charged Jones with five counts: two related to drug distribution (Counts 1 and 2), two alleging illegal gun

possession (Counts 4 and 5), and one alleging possession of a gun in furtherance of a drug-trafficking crime (Count 3). Jones was convicted on all five counts and sentenced to 45 years in prison.

On appeal, Jones urges reversal on five grounds: He contends (1) that the government presented insufficient evidence to prove that he used a firearm in furtherance of a drug-trafficking crime, (2) that the prosecutor engaged in misconduct when he relied on an unadmitted exhibit during his closing argument, (3) that the district court erroneously admitted prejudicial rap music videos, images, and lyrics at trial, (4) that the prosecutor violated due process by questioning a law-enforcement witness about Jones's invocation of his *Miranda* rights, and (5) that these errors cumulatively warrant reversal.

For reasons we will explain, we agree with one of Jones's contentions: We hold that the prosecutor committed misconduct by invoking the unadmitted exhibit in his closing argument to urge the jury to convict Jones on Count 3, and we therefore vacate Jones's conviction as to, and remand for a new trial on, that count. We affirm on all other issues.

**I**

**A**

Hassan Jones was arrested after police stopped a car in which he was a passenger and found a loaded Glock handgun, marijuana, promethazine hydrocodone syrup, and more than $5,000 in cash. Following Jones's arrest, officers seized and searched his cellphone, which contained incriminating photographs, videos, text messages,

notes, and browser searches. In particular, officers found videos of firearms and money, text messages about drug sales, and photos of high-grade marijuana.

Almost two years later, police officers executed a search warrant at the apartment where Jones lived with his girlfriend, her family, and his infant son. In Jones's bedroom, officers found a marijuana cigarette on a counter, a loaded Glock handgun with an extended magazine in his dresser drawer, a Glock handgun with an extended magazine and machine-gun-conversion switch on top of a laundry hamper, two cellphones, one prescription bottle of codeine syrup labeled with Jones's name and address, and an empty bottle of suspected codeine syrup. In Jones's girlfriend's car, which was parked some 60 to 80 feet away from the apartment's front door, officers found four pounds of marijuana.

A grand jury indicted Jones on five counts: (1) conspiracy to possess with intent to distribute marijuana (21 U.S.C. § 846); (2) possession with intent to distribute marijuana (21 U.S.C. § 841(a)(1)); (3) possession of a firearm in furtherance of a drug-trafficking crime (18 U.S.C. § 924(c)(1)(B)(ii)); (4) possession of a firearm by a felon (18 U.S.C. § 922(g)(1)); and (5) possession of an unregistered firearm (26 U.S.C. § 5861(d)).

**B**

A detailed account of Jones's trial is essential to understanding several of his claims on appeal.

The government introduced evidence of everything discovered in the searches described above: the gun, drugs, and cash

discovered during the traffic stop; the digital evidence found on Jones's cellphone following his arrest; the guns, drugs, and digital evidence collected during the search of his apartment; and the marijuana found in his girlfriend's car. Various experts connected the government's evidence to Jones, translated drug-trafficking lingo, and explained how drug dealers typically conduct their business.

Several incidents that occurred during the trial are particularly significant. First, Corporal Charles Hunter—who conducted the search of Jones's apartment—took the stand on the government's behalf. In the course of describing the process of collecting a DNA sample, he offered the following snippet of testimony: "Mr. Jones was transported to Metro Jail before I could do any follow[-]up investigation. No interview was conducted with Mr. Jones as he invoked his right to an attorney after I advised him of *Miranda* rights." Trial Tr. at 216, Dkt. No. 111 at 216. Jones's attorney didn't object to Hunter's reference to Jones's invocation of *Miranda*, and the prosecutor didn't immediately ask any follow-up questions. Several minutes later, though, the prosecutor revisited the issue: "[Y]ou said that you attempted to interview him but he invoked his—or after Mirandizing him, he invoked his rights, correct?" Trial Tr. at 219–20, Dkt. No. 111 at 219–20. The officer responded, "That is correct." Trial Tr. at 220, Dkt. No. 111 at 220. Again, no objection.

Second, over Jones's pre-trial and mid-trial objections, the government presented evidence of rap-music videos, images, and lyrics that Jones had posted depicting him with marijuana, cash,

and firearms with machine-gun-conversion switches. The videos bore disclaimers clarifying that the videos were made for "entertainment purposes only" and that the "props scenes and lyrics should not be taken seriously." Trial Tr. at 352, Dkt. No. 112 at 108.

When the government rested, Jones filed a motion for a judgment of acquittal on all counts, which the district court denied. Jones opted not to testify, so the defense rested.

That leaves the third and final trial episode worth highlighting. During his closing argument, the prosecutor drew the jury's attention to Exhibit 19Z, which comprised a series of Jones's Instagram messages. In connection with Count 3—possession of a firearm in furtherance of a drug trafficking crime—the prosecutor said the following:

> Take a look at Government's Exhibit 19Z. Messages from the defendant's Instagram. What are these about? "We got 1,700 apiece. I brought weed with my money and told you I would have eff after I sold it and you." Right? What's the defendant respond? "I'm through talking. I'm going to smoke you if you don't have my money."
>
> All you need to know about the defendant's possession of firearms in furtherance of drug dealing in one message.

Trial Tr. at 541–42, Dkt. No. 113 at 20–21 (quotation marks added). The difficulty arises because all now agree that Exhibit 19Z was

never admitted into evidence, and so wasn't properly before the jury.

The jury convicted Jones on all five counts. Importantly here, on Count 3 the jury specifically found that Jones used a Glock 23 .40 caliber pistol equipped with a machine-gun-conversion switch in furtherance of Counts 1 and 2. As a result of that finding, Jones's sentence on Count 3 was enhanced from 5 to 30 years. Jones was sentenced to a total of 45 years in prison.

As already noted, Jones raises five issues on appeal. First, he contends that the evidence was insufficient to sustain Count 3—*i.e.*, to prove that he used the Glock 23 in furtherance of a drug-trafficking crime. Second, Jones argues that his conviction on Count 3 should be reversed because the prosecutor engaged in misconduct when he invoked the unadmitted Exhibit 19Z during closing argument. Third, he contends that his convictions on all counts should be reversed because the district court erroneously admitted the rap-music videos, images, and lyrics at trial. Fourth, Jones argues that the prosecutor violated his due-process rights by questioning Corporal Hunter about his invocation of his *Miranda* rights. Finally, he argues that all of these errors, even if not independently reversible, cumulatively warrant reversal.

## II

For the reasons that follow, we agree with Jones that the prosecutor engaged in misconduct when he invoked the unadmitted Exhibit 19Z in connection with Count 3 during his closing argument and that the error was plain and warrants correction.

Accordingly, we vacate Jones's conviction as to Count 3 and remand for a new trial on that count.

We reject Jones's remaining arguments. We hold that the government presented sufficient evidence—even if only barely—to convict Jones on Count 3. We conclude that although the district court erred in admitting the rap-related evidence, the error was harmless. We hold that, in the circumstances of this case, even if the prosecutor's comment about Jones's invocation of his *Miranda* rights violated due process, the error was harmless. And we find that there is no cumulative error warranting reversal.

**A**

We begin, as Jones does, with the contention that the government presented insufficient evidence to prove Count 3—and therefore, that the district court erred in denying Jones's motion for judgment of acquittal on that charge. Although the question is close—the government's § 924(c) case was hardly overwhelming—we conclude that the evidence was legally sufficient.

One important preliminary: The sufficiency challenge that Jones raises on appeal is different from the one he presented in the district court. In particular, whereas Jones contended below that the government hadn't proven that the police actually found a controlled substance, *see* Trial Tr. at 491, Dkt. No. 112 at 247, he argues on appeal that it failed to prove that he used firearms "in furtherance of" his drug-related crimes, *see* Br. of Appellant at 25–29. Accordingly, we review only for plain error. *See United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016) (holding that a defendant must

challenge the sufficiency of the evidence as to a specific count in the district court in order to preserve the challenge for appeal). Accordingly, we must find, as an initial matter, that (1) "there [was] an error," (2) "the error [was] plain," and (3) "the error . . . affected [Jones's] substantial rights." *United States v. Hawkins*, 934 F.3d 1251, 1264 (quoting *Rosales-Mireles v. United States*, 585 U.S. 129, 134 (2018)). If those criteria are met, we (4) "may exercise [our] discretion" to rectify [the] plain error, "but only if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation modified). Here, we needn't proceed beyond the first step because we conclude that although the question is close, a reasonable jury could convict Jones on Count 3 based on the evidence presented at trial.

The applicable standard of review is doing a lot of work here. The well-worn rule, of course, is that on a sufficiency challenge we must "[v]iew[] the evidence in the light most favorable to the government and draw[] all reasonable inferences in favor of the jury's verdict." *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011). "[W]e allow the jury to choose among several reasonable conclusions to be drawn from the evidence." *Id.* (citation modified). To convict Jones on Count 3 and get the accompanying 30-year sentence, the government had to connect Jones's possession of his machine gun—the Glock 23 with the conversion switch found in his bedroom—to his drug-trafficking crime—the marijuana found in his girlfriend's car. 18 U.S.C. §§ 924(c)(1)(A), (B)(ii). We've held that it's not enough for the government to demonstrate the mere "presence of a gun within the defendant's dominion and

control during a drug trafficking offense." *United States v. Timmons*, 283 F.3d 1246, 1253 (11th Cir. 2002). Rather, the government must show that the guns that the defendant possessed "helped, furthered, promoted, or advanced" one of his drug-trafficking offenses. *Id*. at 1252. Accordingly, to support Jones's conviction and 30-year sentence, there must be a "nexus" between the firearms he possessed—including the machine gun—and, as relevant here, a *distribution amount* of marijuana. *Id*. at 1253.

To satisfy this "nexus" requirement, the government introduced the following evidence, in addition to that collected during the various searches: (1) expert testimony that drug dealers "typically" use guns to protect their stashes, Trial Tr. at 476–77, Dkt. No. 112 at 232–33; (2) a text exchange in which another individual referred to "clutching" an assault rifle while selling marijuana, and Jones responded, "I need my gun fool . . . I need my stick to fool"; (3) and a video showing Jones holding a Glock switch in his hand and a bag of marijuana in his lap.

Hardly overwhelming, but given the applicable standard, legally sufficient. A jury could reasonably conclude from the combination of the government's evidence that Jones possessed the machine gun in furtherance of his drug-trafficking activities. Following the government's narrative, the jury could conclude that Jones possessed both guns to protect his drug-dealing operation and that he put similar weapons near small amounts of drugs in the music video because he is a "typical" drug dealer. Viewing the evidence in the government's favor, and drawing all inferences in favor of the

jury's verdict, *see Gamory*, 635 F.3d at 497, we find no error in the district court's denial of Jones's motion for a judgment of acquittal.

**B**

Next up, Jones's contention that the prosecutor engaged in misconduct when, during closing argument, he referenced an exhibit that hadn't been admitted as evidence. As already explained, in support of Count 3, the prosecutor invoked the unadmitted Exhibit 19Z, which comprised a collection of messages from Jones's Instagram account. The prosecutor was pretty blunt:

> Take a look at Government's Exhibit 19Z. Messages from the defendant's Instagram. What are these about? "We got 1,700 apiece. I brought weed with my money and told you I would have eff after I sold it and you." Right? What's the defendant respond? "I'm through talking. I'm going to smoke you if you don't have my money."

> All you need to know about the defendant's possession of firearms in furtherance of drug dealing in one message.

Trial Tr. at 541–42, Dkt. No. 113 at 20–21 (quotation marks added).

Because Jones's attorney didn't object to the prosecutor's invocation of Exhibit 19Z, we review only for plain error using the traditional four-element test already outlined. *See supra* at 9.

**1**

First, error. We evaluate alleged prosecutorial misconduct using a two-part test: "(1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014) (citation modified).

The first element is easily satisfied. We have held that "[a] prosecutor may not go beyond the evidence before the jury during closing argument," *United States v. Iglesias*, 915 F.2d 1524, 1529 (11th Cir. 1990), and the government has acknowledged, as it must, that Exhibit 19Z "was not admitted into evidence," Br. of Appellee at 34. Worse, by far—more on this shortly—the prosecutor told jurors that, with respect to Count 3, Exhibit 19Z was "[a]ll [they] need[ed] to know." Trial Tr. at 542, Dkt. No. 113 at 21.

In assessing the second element, "[w]e generally consider four factors," which must be "viewed in the context of the trial as a whole": "(1) whether the challenged comments had a tendency to mislead the jury or prejudice the defendant; (2) whether the comments were isolated or extensive; (3) whether the comments were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof establishing the guilt of the defendant." *Reeves*, 742 F.3d at 505.

Our evaluation of the four factors leads us to conclude that the prosecutor engaged in misconduct—and thus committed error—when he invoked Exhibit 19Z in connection with Count 3. First, the prosecutor's comment had a "tendency to . . . prejudice"

Jones because he expressly told jurors that the unadmitted Exhibit 19Z was "[a]ll [they] need[ed] to know" to convict him on the § 924(c) charge. Second, while the comment might be deemed to have been "isolated" in a sense, Exhibit 19Z was one of only three pieces of evidence that the prosecutor highlighted in closing, and he lingered on it for about 45 seconds. Third, although the evidence is mixed, we are prepared to assume—because it doesn't affect our bottom line—that the prosecutor didn't act "deliberately" but rather "accidentally placed [Exhibit 19Z] before the jury."

Our assessment of the fourth factor—"the strength of the competent proof establishing [Jones's] guilt"—warrants a bit more explanation because, for reasons already explained, although the government's evidence was legally sufficient, it wasn't particularly "str[ong]."

We think the government sufficiently proved that Jones possessed the two firearms—including the machine gun. In particular, the government presented the two guns found in the search of the apartment—one in a dresser drawer and one in the hamper—as well as a text exchange in which Jones and another dealer commiserated about the importance of their firearms. And we think the government likewise proved that Jones possessed distribution amounts of marijuana. Specifically, it pointed to the four pounds of marijuana found in Jones's girlfriend's car. The stickier question is the "strength" of the government's proof regarding the required nexus—*i.e.*, that Jones possessed firearms to *further* his trafficking crimes.

Lacking any direct evidence, the government called expert witnesses to testify that drug dealers "typically" use guns to protect their stashes. *See* Br. of Appellee at 25. And it contends on appeal that because Jones had the firearms, and because he had the marijuana, the circumstantial evidence "supported the conclusion that the firearm furthered Jones's possession with intent to distribute the marijuana found in the trunk of the car." *Id*. Sufficient, but again, hardly compelling.

Nor do the factors that we outlined in *Timmons* meaningfully move the "strength" needle. Per *Timmons*, we consider "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon was stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found." 283 F.3d at 1253 (citation modified). True, Jones possessed the guns in question illegally. And true, they were loaded. But they were more than 60 feet away from a distribution amount of marijuana, which was itself locked in a car's trunk. And because the guns were stashed in a dresser drawer and on a laundry hamper, they weren't necessarily readily accessible to Jones. All of which is to say that while the government's evidence was legally sufficient to convict Jones on Count 3, it wasn't what we'd call "str[ong]." *Reeves*, 742 F.3d a 505.

In light of (1) the prosecutor's statement that the unadmitted Exhibit 19Z was "[a]ll [the jury] need[ed] to know" to convict Jones on Count 3, (2) the fact that the prosecutor highlighted the

exhibit during his closing, and (3) the sufficient-but-not-strong character of the government's evidence on the § 924(c) count, we have little trouble concluding that the prosecutor's remarks "prejudicially affect[ed Jones's] substantial rights." *Id.* Accordingly, we find that Jones has met the first prong of the plain-error test.

**2**

Second, we conclude that the error was plain. "An error is 'plain' if it is obvious or clear under current law." *United States v. Laines*, 69 F.4th 1221, 1229 (11th Cir. 2023) (citation modified). "[W]here the explicit language of a statute or rule does not specifically resolve an issue," plainness requires "precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

Our caselaw is clear: "[A] prosecutor may not exceed the evidence presented at trial during [] closing argument." *Reeves*, 742 F.3d at 505; *see United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997); *United States v. Smith*, 928 F.3d 1215, 1232 (11th Cir. 2019); *United States v. Maradiaga*, 987 F.3d 1315, 1328 (11th Cir. 2021); *United States v. Al Jaberi*, 97 F.4th 1310, 1328 (11th Cir. 2024). And that prohibition is as longstanding as it is clear, stretching back nearly 50 years. *See United States v. Phillips*, 664 F.2d 971, 1030 (5th Cir. Unit B 1981) ("[A] prosecutor is prohibited from seeking to obtain a conviction by going beyond the evidence before the jury."); *United States v. Cole*, 755 F.2d 748, 767 (11th Cir. 1985) ("The legal metes and bounds of a prosecutor's argument are defined by the evidence before the jury. Thus, a prosecutor must limit his

comments to admissible evidence."); *United States v. Martinez*, 96 F.3d 473, 476 (11th Cir. 1996) ("Lawyers know that argument to the jury must be based solely on the evidence admitted at trial.").

The prosecutor's use of the unadmitted Exhibit 19Z was in direct contravention of our precedent. The prosecutor wasn't assisting the jury in "analyzing, evaluating, and applying the evidence," wasn't suggesting conclusions that the jury should draw from the record evidence, and wasn't "indicat[ing] [the government's] opinion." *United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978). Rather, he was expressly urging the jury to convict Jones on the basis of extra-record evidence. The error was patent.

**3**

Third, the prosecutor's invocation of Exhibit 19Z affected Jones's substantial rights. When reviewing alleged prosecutorial misconduct for plain error, the error and substantial-rights inquiries substantially overlap. As already explained, in evaluating the merits of a prosecutorial-misconduct claim, we ask—at the second step of a two-step analysis—whether "the remarks . . . prejudicially affect[ed] the substantial rights of the defendant." *Reeves*, 742 F.3d at 505. And in making *that* determination, we ask whether a "reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *Id*. (citation modified). That inquiry mirrors almost precisely the plain-error test's substantial-rights analysis, which asks whether an error was "prejudicial"—*i.e.*, whether it "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993).

Accordingly, for all the reasons we concluded that Jones demonstrated prosecutorial misconduct, we hold that the misconduct affected his substantial rights for plain-error purposes.

**4**

The first three conditions of plain-error review having been satisfied, we conclude that the prosecutor's invocation of Exhibit 19Z in connection with Count 3 "seriously affected the fairness, integrity, or public reputation" of Jones's trial. *Hawkins*, 934 F.3d at 1267 (citation modified). The circumstances we confront are particularly troubling: The evidence of Jones's guilt on the § 924(c) offense was thin, the prosecutor told jurors at the close of trial that "all [they] need[ed]" to convict him of that crime was a piece of evidence that wasn't before them, and Jones was sentenced to 30 years on that count alone. If left uncorrected, the prosecutor's misconduct in this case would leave "reasonable citizen[s]" with "a rightly diminished view of the judicial process." *Id.* at 1268 (citation modified).

\*          \*          \*

For the foregoing reasons, we hold that the prosecutor's invocation of unadmitted evidence in connection with Count 3 constituted plain error that affected Jones's substantial rights, and we exercise our discretion to correct it. We therefore vacate Jones's conviction on Count 3 and remand for a new trial as to that count.

## C

Jones separately challenges the introduction of (1) a 29-second video clip in which he raps and wields a gun, (2) a series of screenshots from a music video depicting him handling various firearms as well as images of drugs and cash, and (3) a note from his phone featuring what seem to be violent rap-music lyrics. He contends that the district court abused its discretion by admitting those items under Federal Rules of Evidence 401 and 403.[1] In particular, Jones argues that that government couldn't prove that the items depicted in what we'll call the "rap-related evidence" were real and, therefore, that the evidence was both (1) irrelevant and (2) substantially more prejudicial than probative. The government responds that the evidence demonstrates that Jones handled weapons similar to the one seized from his apartment and that he possessed and conspired to distribute marijuana.

We agree with the government that the evidence meets the low relevance bar prescribed by Rules 401 and 402—namely, that a piece of evidence have "any tendency to make a fact more or less probable" and be "of consequence in determining the action." Fed. R. Evid. 401. A jury could conclude that the rap-related evidence made it somewhat "more . . . probable" that Jones possessed the contraband he was charged with possessing.

---

[1] Because Jones timely objected in the district court, we review for abuse of discretion. *Gamory*, 635 F.3d at 492. Errors aren't reversible if they are harmless. *United States v. Khanani*, 502 F.3d 1281, 1292 (11th Cir. 2007).

Rule 403 separately directs district courts to "exclude relevant evidence if its probative value is substantially outweighed" by, among other things, "unfair prejudice." Fed. R. Evid. 403. Here, as in a past case of ours, "the substance of the rap [evidence] was heavily prejudicial" because, as there, the videos and lyrics contained "violence [and] profanity" and "could reasonably be understood as promoting a violent and unlawful lifestyle." *Gamory*, 635 F.3d at 493. The government counters that the evidence is probative of "Jones's knowing possession of the firearms" alongside "cash [] and marijuana similar to" that alleged in the indictment. Br. of Appellee at 27–28.

We're skeptical. Like the evidence at issue in *Gamory*, the videos, screenshots, and lyrics have little relevance to Jones's knowing possession of the two Glocks at issue here. *See Gamory*, 635 F.3d 480, 493 (11th Cir. 2011). The government witness presenting the screenshots at trial couldn't tell whether the guns shown were real or props, and on appeal the government doesn't dispute Jones's contention that "the guns depicted in the videos were not the guns charged in the indictment," Br. of Appellant at 35. Instead, it asserts only that the firearms (many of which weren't Glocks) were "similar to that alleged in the superseding indictment," Br. of Appellee at 28. Add to that the fact that one of the YouTube videos included the disclaimer that "[a]ll props scenes and lyrics should not be taken seriously" and the probative value seems pretty low.

We needn't definitively decide the Rule 403 issue, though, because we hold that any error in admitting the rap-related

evidence was harmless.  Even where a district court abuses its discretion in admitting disputed evidence, its error will be deemed harmless when we can say with "fair assurance" that the "judgment was not substantially swayed by the error."  *Kotteakos v. United States*, 328 U.S. 750, 765 (1946).  Here, the government presented substantial proof, rap-related items aside, that Jones knowingly possessed the two Glocks at issue here.  And indeed, before us, Jones effectively admits as much:  "At trial, the government introduced numerous exhibits not extracted from music videos that showed Mr. Jones talking about or handling drugs, guns, and cash, and the two guns charged in the superseding indictment were found in Mr. Jones's bedroom with his DNA on them."  Br. of Appellant at 37; *see also* Reply Br. of Appellant at 5.  We are satisfied the jury was presented with ample evidence to convict Jones on Counts 1, 2, 4, and 5.

## D

Next up, Jones's argument that the government violated the Due Process Clause as interpreted in *Doyle v. Ohio*, 426 U.S. 610 (1976), when one of its witnesses and the prosecutor both commented on his invocation of his *Miranda* rights.[2]

Recall that at trial, Corporal Hunter—who had conducted the search of Jones's apartment—testified for the government.  In

---

[2] We review "issues of constitutional law *de novo*."  *United States v. O'Keefe*, 461 F.3d 1338, 1346 (11th Cir. 2006).  Alleged *Doyle* violations are subject to harmless-error review.  *See United States v. Miller*, 255 F.3d 1282, 1285–86 (11th Cir. 2001).

the course of describing the process by which he had collected a DNA sample, he made the following comment: "Mr. Jones was transported to Metro Jail before I could do any follow[-]up investigation. No interview was conducted with Mr. Jones as he invoked his right to an attorney after I advised him of *Miranda* rights." Trial Tr. at 216, Dkt. No. 111 at 216. Shortly thereafter, the prosecutor circled back to the issue: "[Y]ou said that you attempted to interview him but he invoked his—or after Mirandizing him, he invoked his rights, correct?" Trial Tr. at 219–20, Dkt. No. 111 at 219–20. Hunter responded, "That is correct." Trial Tr. at 220, Dkt. No. 111 at 220. Jones's lawyer didn't object to either comment at the time, but Jones contends on appeal that they ran afoul of *Doyle*.

Because Jones's lawyer didn't lodge a contemporaneous objection, we review only for plain error. *See supra* at 9. For reasons we will explain, we hold that in the particular circumstances of this case, any *Doyle* error that might have occurred was harmless.

In order to give effect to *Miranda*'s "prophylactic" protections, the Supreme Court has barred the government from using an "arrested person's silence" against him at trial for "impeachment or for substantive evidence of guilt." *Doyle*, 426 U.S. at 617–19; *accord United States v. Ruz-Salazar*, 764 F.2d 1433, 1436 (11th Cir. 1985). A violation of that prohibition, the Court has explained, would be "fundamentally unfair and a deprivation of due process." *Doyle*, 426 U.S. at 618; *accord United States v. Miller*, 255 F.3d 1282, 1285 (11th Cir. 2001).

To be clear, the prosecutor here should not—not, not, not—have commented on Jones's invocation of his right to remain silent. We don't fault the prosecutor for Corporal Hunter's spontaneous statement, in response to a question about DNA collection, that "[n]o interview was conducted with Mr. Jones as he invoked his right to an attorney after I advised him of *Miranda* rights." But we can—and do—fault the prosecutor for returning to the issue with her own pointed question: "[Y]ou said that you attempted to interview him but he invoked his—or after Mirandizing him, he invoked his rights, correct?" We shouldn't have to keep saying this, but alas, it seems the message isn't getting through: So let us once again make "crystal clear" that the government may not "call attention to" a defendant's invocation of his *Miranda* rights. *Miller*, 255 F.3d at 1285. Prosecutors know better, and they simply *must* stop "continu[ing] to indulge themselves in this way"—enough is enough. *Id.*

Despite the impropriety of the prosecutor's conduct—and our increasing consternation at government lawyers' repeated refusals to heed our warnings—we are satisfied that, in the particular circumstances presented in this case, any *Doyle* violation that might have occurred was harmless. We've held that "a prosecutor's single reference to [a] defendant's post-*Miranda* silence" is harmless "if it occurs during a trial at which the government's evidence was otherwise overwhelming." *Id.* at 1285–86; *see also United States v. Gonzalez*, 921 F.2d 1530, 1549–51 (11th Cir. 1991). Here, it's clear to us that between the items collected during the apartment search and the digital evidence on Jones's phones, any lingering implication

from the prosecutor's improper question had "no substantial and injurious effect or influence in determining the jury's verdict" on Counts 1, 2, 4, and 5. *Miller*, 255 F.3d at 1285 (citation modified).

## E

Jones finally argues that even if none of the errors that he has alleged warrants reversal on its own, their accumulation does. Because we vacate Count 3 on the ground that the prosecutor's reliance on the unadmitted Exhibit 19Z constituted plain error, we focus here only on the cumulative effect of the alleged errors on the remaining counts.

We reject Jones's cumulative-error argument. Even viewed in combination, the errors that Jones has alleged didn't render his trial fundamentally unfair. *See United States v. Thomas*, 62 F.3d 1332, 1343 (11th Cir. 1995). "[E]xamin[ing] the trial as a whole," *United States v. Calderon*, 127 F.3d 1314, 1333 (11th Cir. 1997), he suffered no violation of his "substantial rights." *United States v. Margarita Garcia*, 906 F.3d 1255, 1281 (11th Cir. 2018).

## III

To recap, we hold that the government's use of Exhibit 19Z in its closing argument was plain error, and we exercise our discretion to correct it. We therefore **VACATE** Jones's conviction on the § 924(c) offense and **REMAND** for a new trial on Count 3. We reject Jones's remaining arguments and **AFFIRM** the district court's judgment in all other respects.